**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

```
FILED by ℛℰ𝒮  D.C.

DEC - 7 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI
```

ASPEN SPECIALTY INSURANCE COMPANY,

              Plaintiff,

vs.                                                              **CASE NO.**

ROYAL PALM PLACE AT THE HAMMOCKS
CONDOMINIUM ASSOCIATION, INC.,                    **09-23635**

              Defendant.

_____/   **CIV - HUCK**  MAGISTRATE JUDGE
                                                              O'SULLIVAN

<u>**COMPLAINT FOR DECLARATORY RELIEF**</u>

Plaintiff, ASPEN SPECIALTY INSURANCE COMPANY ("Aspen Specialty") by and

through its undersigned counsel, files this Complaint for Declaratory Relief against ROYAL

PALM PLACE AT THE HAMMOCKS CONDOMINIUM ASSOCIATION, INC., ("Royal

Palm"), and as grounds therefore would state as follows:

<u>**JURISDICTION**</u>

1.      Jurisdiction in the United States District Court for the Southern District of

Florida is proper pursuant to 28 U.S.C. Section 1332, which establishes original jurisdiction

in the District Court in all civil actions where the matter is between citizens of different

states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

There is complete diversity of citizenship between the parties within the meaning of 28

U.S.C. Section 1332 and the amount in controversy exceeds $75,000, exclusive of interest

and costs.

## PARTIES

2.      Plaintiff, Aspen Specialty, at all times material hereto was and is a corporation organized and existing under the laws of the State of North Dakota, with its principal place of business in Boston, Massachusetts.

3.      At all times material hereto, Defendant Royal Palm was and is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami, Florida.

## NATURE OF THE CLAIM

4.      This is an action for Declaratory Judgment pursuant to 28 U.S.C. Section 2201 for the purpose of construing and interpreting the terms of an insurance contract and for a determination of the rights and obligations, if any, of the parties arising from the insurance contract between Aspen Specialty and Royal Palm.

## GENERAL ALLEGATIONS

5.      There existed at all times material hereto a contract of insurance between Aspen Specialty and Royal Palm, Policy No. PP000456, providing coverage for the property located at 15750 WS Terrace, Miami, Florida, 33103. The coverage under said policy was effective June 2, 2005 to June 2, 2006. A certified copy of the policy is attached hereto as "Exhibit 1" and made a part hereof.

6.      On October 24, 2005 Hurricane Wilma impacted Miami, Florida and allegedly damaged the subject property.

7.      The first notice Aspen Specialty received regarding the Insured's loss was on March 2, 2007, some 16 months after Hurricane Wilma occurred. Due to the late date of notice, Aspen Specialty subsequently contacted the retail insurance agent for the

Insured and discovered that the retail insurance agent did not receive any earlier notice of loss from the Insured.

8.    Aspen Specialty assigned the loss to Associated Claims Management, Inc.("ACM"), an independent adjusting firm retained by Aspen Specialty to handle this claim. On March 15, 2007, ACM sent a written request to the then-public adjuster, a unit owner and officer of the Insured,  for relevant documents regarding the loss.  ACM also advised the public adjuster that the Insured must comply with its duties after loss and that there was a potential late notice issue, since the loss was reported more than 16 months after the loss. ACM's letter requested that the relevant documents be provided by May 18, 2007; however, there was no response. A copy of the letter is attached hereto as "Exhibit 2".

9.    In June 2007, ACM followed up with the public adjuster requesting the necessary documentation; again, no response.  A copy of the letter is attached hereto as "Exhibit 3".

10.    Nothing more was heard from the Insured or its public adjuster until November 28, 2007, at which time Aspen Specialty was contacted by EPIC Group (a different public adjusting firm). EPIC advised that it had taken over the claim from the prior public adjuster.

11.    ACM promptly contacted EPIC Group on November 29, 2007, to speak with Mr. Greene, the public adjuster noted by EPIC as assigned to this loss. ACM was advised that Mr. Greene was not the public adjuster assigned to the Insured's claim, but that he would have that person call ACM.

12. On December 3, 2007, ACM contacted Amy Diaz, the Insured's property manager, who confirmed the Insured had changed the public adjuster it was using on the claim. Ms. Diaz then advised ACM that she did not yet have a release from the prior adjuster.

13. On December 7, 2007, ACM wrote to Jorge Rodriguez, president of the association, and asked for documentation pertinent to the loss, requested a sworn statement in proof of loss be provided by February 5, 2008, with the supporting documents, requested a damage survey from all unit owners and indicated that examinations under oath would be required of the President, Vice President and Treasurer of the complex. (See Exhibit "4")

14. A fax dated February 5, 2008, to ACM from Epic Group requested an extension of time for complying with the proof of loss requirement, indicating that EPIC was preparing an estimate for the loss. The EPIC fax also stated that the Insured had complied with all the terms and conditions of the policy. (See Exhibit "5").

15. ACM responded that no extension had been given as to the requested proof of loss, and denied EPIC's contention that the Insured had complied with the policy terms and conditions. ACM requested compliance with the policy requirements within 30 days and reserved all rights under the policy. (See Exhibits "6").

16. On February 22, 2008, ACM received a large package of documents from the Insured; which contained only some of the requested documents. On March 13, 2008, ACM received a Sworn Statement in Proof of Loss from the Insured for $2,159,622.90. The Proof of Loss listed an incorrect deductible amount, and was received more than 30 days after the due date prescribed by the terms and conditions of the policy of insurance.

17.    On March 14, 2008, ACM received a binder of documents purported to support the Proof of Loss, however many of the invoices that were supplied for emergency repairs were for leaks in the roofs of individual units and none of the invoices mentioned that the repairs were for hurricane damage.

18.    On March 25, 2008, ACM sent written correspondence to the Insured rejecting the Proof of Loss because of the incorrect deductible amount stated on the proof of loss.  The ACM correspondence further requested copies of the engineering reports which the public adjuster had indicated would be provided.  The ACM letter also requested dates for an inspection of the Insured property.  (See Exhibit "8").

19.    On April 1, 2008, EPIC agreed that ACM could inspect the property on May 18, 2008.  ACM informed EPIC of its inspection procedures.  EPIC informed ACM on or about April 21, 2008 that the interiors at the Insured property might not all be available for inspection, as the association took the position that they cannot be accessed without the owners' permission except in an emergency.

20.    On May 8, 2008, EPIC informed ACM that the inspection would need to be postponed, and stated the Association's Board of Directors still did not agree about the access to the interiors.  EPIC indicated it had called a special meeting of the Board of Directors to try to explain the importance of their compliance with the claim investigation.

21.    On July 16, 2008, ACM wrote the Insured, reiterating the items it needed to continue the claim investigation and requiring the documentation and an inspection within 30 days.  (See Exhibit "8").

22.    In early August, ACM received information that EPIC was no longer representing the Insured.  (See Exhibit "9").  In late August, ACM received a letter from

Amy Diaz, the property manager, indicating she was authorized to act on behalf of the association. Ms. Diaz further advised ACM that ACM would have to come onsite to inspect the documents which ACM had previously requested from the Insured, because the Insured did not want to incur the expense of mailing the documents to ACM. (See Exhibit 10").

23.    Per Ms. Diaz's request, ACM traveled to Ms. Diaz's office to inspect the documents. ACM also visited the loss location to inspect the roofs. Unfortunately, at that time, the property manager and the public adjuster failed to arrange access to the interior of the units which was needed to complete the inspection.

24.    ACM made numerous requests for the Insured's engineering report to support the claim. After many requests for a copy of the report, the Insured informed ACM that it had not actually retained an engineer. When an engineering report for the roofs was finally provided to ACM, it failed to state that the roof damage was caused by Hurricane Wilma.

25.    On September 12, 2008, ACM responded to the letter from Ms. Diaz. ACM advised Ms. Diaz that ACM still needed to receive the requested documents and that ACM needed to inspect the interior of every unit while onsite. In addition, Examinations Under Oath would be required of the officers, maintenance supervisor and property manager, as well as those holding these positions at the time of the loss. (See Exhibit "11").

26.    Then on October 3, 2008, the Insured filed a Civil Remedy Notice, despite its being out of compliance with policy terms and conditions. Aspen Specialty timely responded to that notice. (See Exhibits "12" and "13").

27.    On November 21, 2008, Aspen Specialty's counsel sent a letter to the Insured and it's new public adjuster, Juan Carlos Artiles of Freedom Public Insurance Adjusters. The letter requested that the Examinations Under Oath of the Insured, be held on December 9, 2008 and December 10, 2008. The letter also renewed Aspen Specialty's request for documentation and information needed to support the claim. (See Exhibit "14"). The Insured subsequently requested the dates of the Examinations Under Oath be rescheduled to January 14, 2009.

28.    On December 17, 2008, counsel for Aspen Specialty sent a letter to the Insured and the Insured's public adjuster, Juan Carlos Artiles. The letter reset the Examinations Under Oath for January 14, 2009, as requested by the Insured. This letter also renewed Aspen Specialty's request for documentation and information supporting the claim, as well as advising the Insured of it's Duties After Loss. (See Exhibit "15").

29.    On January 5, 2009, the Insured's attorney, Leo A. Manzanilla, sent a letter to Aspen Specialty's attorney, Bill Wallis, advising that he had been retained to represent the Insured and would need to reschedule the Examinations Under Oath set for January 14, 2009. (See Exhibit "16").

30.    On January 14, 2009, a letter was sent by Aspen Specialty's attorney, Bill Wallis, to the Insured's attorney, Leo A. Manzanilla, rescheduling the Examinations Under Oath for January 28, 2009. The rescheduling of the Examinations Under Oath was conducted with the assistance of Attorney Manzanilla's paralegal, Maria. It was understood that the scheduled date and time for the Examinations Under Oath was acceptable by all who planned to attend. (See Exhibit "17").

31.     Subsequently, the Insured's attorney, Leo A. Manzanilla, informed Aspen Specialty's counsel, Bill Wallis, that the Insured is cancelling the scheduled Examinations Under Oath. This request to cancel the Examinations Under Oath by the Insured's counsel is documented by a letter dated February 3, 2009, from Aspen Specialty's attorney, Bill Wallis, to the Insured's attorney, Leo A. Manzanilla. (See Exhibit "18").

32.     On February 18, 2009, Aspen Specialty's counsel sent the Insured's counsel a letter rescheduling the Examinations Under Oath for February 25, 2009. (See Exhibit "19"). However, on February 20, 2009, the Insured's assistant, Maria Pozo, contacted the Insured's counsel to cancel the Examinations Under Oath scheduled for February 25, 2009. The Insured's counsel provided alternative dates to conduct Examinations Under Oath, including April 29, 2009.

33.     On February 25, 2009, Aspen Specialty's counsel sent a letter to the Insured's counsel scheduling the Examinations Under Oath for April 29, 2009. The letter renewed Aspen Specialty's request for documentation and information in support of the claim and advised the Insured of it's duties after loss. (See Exhibit "20").

34.     On April 29, 2009, the Insured's attorney appeared at the Examination Under Oath without any of the individuals requested by Aspen Specialty to be subject to the Examination Under Oath. The Insured's counsel did provide an individual to be subject to the Examinations Under Oath. Unfortunately, that individual did not possess knowledge of the issues and detailed information needed to support of the claim. In addition, that individual revealed that claimed damage was the result of other causes including Hurricanes Katrina and Wilma.

-8-

35.     On May 22, 2009, Aspen Specialty's counsel sent the Insured's counsel a letter requesting the Examination Under Oath of the Association President, Mr. Silvio Masieri, and the Property Manager, Amy Diaz.   The letter renewed the request for documentation and information needed to support the claim and requested a response from the Insured by May 29, 2009.   (See Exhibit "21").   The Insured did not respond.

36.     On July 16, 2009, Aspen Specialty's counsel again sent a letter to the Insured scheduling the Examinations Under Oath of Silvio Masieri and Amy Diaz for August 4, 2009. (See Exhibit "22").   The Insured contacted Aspen Specialty's counsel to reschedule the Examinations Under Oath and agreed that the Examinations Under Oath of Silvio Masieri, Amy Diaz, and Christina Gotay would be conducted on August 19, 2009.

37.     On July 27, 2009, Aspen Specialty's counsel sent the Insured a letter confirming the rescheduling of the Examinations Under Oath of Silvio Masieri, Amalay Diaz, and Christina Gotay for Wednesday, August 19, 2009.   (See Exhibit "23").

38.     On July 28, 2009, Aspen Specialty's counsel had a telephone conversation with the Insured's public adjuster who confirmed that Amalay Diaz, Christina Gotay, and Silvio Masieri would appear at the Examinations Under Oath on Wednesday, August 19, 2009.   The telephone conversation was followed by a confirming letter from Aspen Specialty's counsel dated July 28, 2009.   (See Exhibit "24").

39.     On August 10, 2009, the Insured's public adjuster, Juan Carlos Artiles, contacted Aspen Specialty's counsel by telephone and informed that the Examinations Under Oath set for August 19, 2009, must be postponed to a later date due to the fact that the Property Manager, Amy Diaz, informed that she could not have the individuals ready for the Examinations Under Oath as set.   During that conversation, Mr. Artiles also

informed that the Insured's attorney may no longer be representing the Insured and they may have to retain a new attorney.  Mr. Artiles agreed to obtain additional dates for the Examinations Under Oath and provide those dates to Aspen Specialty's counsel within two days.  The telephone conversation was documented by a letter sent by Aspen Specialty's counsel to the Insured's public adjuster dated August 10, 2009.  (See Exhibit "25").

40.     On August 12, 2009, the Insured's public adjuster, Mr. Artiles, contacted Aspen Specialty's counsel and informed that the Insured has had issues with its Board of Directors and several people have stepped down.  The Association will need to conduct a vote, including a vote to hire a new attorney to handle further processing of the claim.  Therefore, they could not provide any dates of availability for the requested Examinations Under Oath.  Aspen Specialty's counsel requested that Mr. Artiles provide the date in which the Association will meet to conduct its vote so that Aspen Specialty's counsel could follow-up and reschedule the Examinations Under Oath.  The telephone conversation between Aspen Specialty's counsel and the Insured's public adjuster is documented by the letter dated August 12, 2009.  (See Exhibit "26").  To date, the Insured has not responded.

41.     In a letter dated August 28, 2009, sent by the Insured's property manager, Amy Diaz, she informs that the services of the Insured's public adjuster, Juan Artiles, have been terminated effective immediately.  The letter also states that the Insured's Board of Directors is in the process of hiring a new public adjuster to assist with the claim.  After receipt of the letter, ACM attempted to contact the property manager a number of times and left voice mail messages.  The Insured's property manager has failed to return any calls.  (See Exhibit "27").

42.     Aspen Specialty's attempts to evaluate and adjust this claim has been thwarted by Royal Palms ongoing lack of cooperation and delays. Compliance with the policy terms and conditions are required for resolution of this claim. Specifically, the Examinations Under Oath have been requested pursuant to the following portions of the applicable policy of insurance:

> SECTION E - LOSS CONDITIONS
>
> * * *
>
> 3.   Duties In The Event of Loss or Damage
>      a.   you must see that the following are done in the event of loss or damage to Covered Property:
>
>      * * *
>
>           (8)   Cooperate with us in the investigation or settlement of the claim.
>
>      b.   We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

43.     From the onset of this claim, Aspen Specialty has been prejudiced due to Royal Palm's initial late reporting of this loss; continuing failure to comply with requests pursuant to the policy; lack of cooperation; delays; and misrepresentation and concealment of information, to wit, failure to report contribution of Hurricane Katrina damages to the damages claimed only from Hurricane Wilma.

44.     In light of the foregoing, Aspen Specialty has been denied its rights under the policy to evaluate and adjust the claim and had been prejudiced by Royal Palm's breach of the aforementioned policy conditions.

45.     Aspen Specialty is in doubt as to its legal rights and obligations in this situation and therefore, seeks judicial determination of its rights with respect to the pending claim.

46.     There is a present bonafide controversy between the parties and Aspen Specialty is in need of a judicial declaration to protect its rights and to determine its rights, duties and obligations.

WHEREFORE, ASPEN SPECIALTY INSURANCE COMPANY, respectfully requests this Honorable Court to enter a judgment in its favor declaring that:

(a)     Royal Palm breached the policy with a late notice of the loss;

(b)     Royal Palm breached the policy by failing to cooperate, comply with requests and delayed the resolution of this claim thereby prejudicing Aspen Speciality in the process; and

c)      Royal Palm breached the policy by misrepresenting and concealing information regarding subsequent contributory damages to the loss location from Hurricane Katrina.

Aspen Specialty further requests it be awarded the costs of this action and any other relief as the Court deems just and proper under the circumstances.

Dated this $\underline{3}$ day of December, 2009.

Respectfully submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG
LLP


WILLIAM E. WALLIS, ESQ.
Florida Bar No.:  0831750
MAX G. FACTOR
Florida Bar No.: 0912750
3600 Maclay Boulevard, Suite 101
Tallahassee, Florida  32312
Telephone: (850) 894-4111;
Facsimile:  (850) 894-4999
wwallis@butlerpappas.com
mfactor@butlerpappas.com
ATTORNEYS   FOR   PLAINTIFF   ASPEN
SPECIALTY   INSURANCE COMPANY



# ASPEN

ASPEN SPECIALTY

**Common Policy Declarations**
ASPPR011

Aspen Specialty Insurance Company

Insured Name & Mailing Address:

ROYAL PALM PLACE AT THE HAMMOCKS
CONDOMINIUM ASSOCIATION
C/O MIAMI MANAGEMENT, INC.
14275 S.W. 42 AVENUE
MIAMI, FL 33186

Broker Name & Mailing Address:

SWETT & CRAWFORD
200 NORTHCREEK, SUITE 800
3718 NORTHSIDE PARKWAY N.E.
ATLANTA, GA 30327

The Named Insured above includes any subsidiary, associated or affiliated company, corporation, firm, organization, partnership, joint venture or individual as exists now or is hereafter constituted or acquired, and any other party or interest that is required by contract or other agreement to be named.

Policy Number:   PP 000456

Effective Date:   06/02/2005 12:01AM
Expiration Date: 06/02/2006 12:01AM

Premium and Fee Summary:

In return for the payment of the premium indicated below, and subject to all the terms of this policy, we agree to provide the insurance as stated in this policy.

Coverages: ISO Special Forms Excluding Flood and Earthquake

| Coverage | Premium | Fees |
|---|---|---|
| Commercial Property | $173,378 | |
| Terrorism | $ | |
| Other premium | $ | |
| Inspection Fees | | $350 |
| Other Fees: | | $ |
| Total premium due | $173,378 | |
| Minimum retained premium | $ 60,682 | |

Coverage Forms Applicable:   coverage form schedule as more specifically outlined in Aspen form ASPPR006, *Schedule of Applicable Forms*

This is a True and Certified Copy of the Original Policy. It Includes the Declaration Page, Insuring Agreement and __2__ Endorsements.

*C.J. Maciejewski*

(Authorized Representative)

99 High Street | Boston | Massachusetts | 02110 | Phone 617-531-5100 | Fax 617-531-5114



EXHIBIT

1

ASPEN SPECIALTY 000041

FLORIDA

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.

Surplus Lines Broker: JORGE E. ANDINO

Address: 2100 PONCE DE LEON BLVD.

CORAL GABLES, FL 33134

Identification Number: A006568

ASPSL007 (11/04)



**ASPEN**

ASPEN SPECIALTY

### Summary of Insurance and Special Provisions
ASPPR011A

Locations:      As per schedule dated 05/25/05 on file with company

Occurrence Limits:      $5,000,000 (Limits are scheduled, not blanket)

Occurrence Sub-Limits[1]:   Values as per schedule as submitted and on file.

Per Occurrence and in the Aggregate Sub-Limits[2]:

Excluded                              For the peril of Flood
Excluded                              For the peril of Earthquake

Deductibles/Attachment of Coverage:

The following deductible amounts shall apply to each claim for loss or damage under this Policy in respect to the loss category indicated:

| Peril | Attachment | Per | Minimum |
|---|---|---|---|
| All Other Perils (AOP) | $5,000 | Occurrence | $ |
| Windstorm or Hail | 5% of TIV | Per Location Per Occurrence | $50,000 |

Valuation:

| Coverage | RC | ACV | ALS | Other: | Coinsurance |
|---|---|---|---|---|---|
| Building | ☒ | ☐ | ☐ | ☐ | Nil% |
| Contents | ☐ | ☐ | ☐ | ☐ | % |
| Business Income | ☐ | ☐ | ☐ | ☐ | % |

Special Conditions:

- A satisfactory loss control report conducted by Aspen Specialty Insurance Company and compliance with any recommendations.
- Insured is responsible for paying surplus lines tax, etc.
- Premium is due within 45 days of binding.
- **The application of a "per location" deductible, if shown above, is intended to apply to the TIV (total insurable values) of the entire premises, inclusive of all buildings, and is NOT applicable to a series of individual buildings regardless of the labeling in the statement of values on file with the Company."
- Minimum earned premium of 35% will apply, except fully earned in FL and/or all Tier 1 Counties for those locations insured within the period of June 1st to October 31st.
- Limits are per schedule of values on file with us. Limits are not blanket to the policy.

---

[1] Sub-limits do not add to the policy Occurrence Limit
[2] Aggregate limits are peril specific do not add to the policy Occurrence Limit

99 High Street | Boston | Massachusetts | 02110 | Phone 617-531-5100 , Fax 617-531-5114

ASPEN SPECIALTY 000043



ASPEN

ASPEN SPECIALTY

**Schedule of Applicable Forms**
ASPPR0006

| Form Title | Form Number | Version | Applicable[3] |
|---|---|---|---|
| Common Policy Declarations | ASPPR011 | 07/04 | ☒ |
| Summary of Insurance & Special Provisions | ASPPR011A | 07/04 | ☒ |
| Schedule of Applicable Forms | ASPPR006 | 01/04 | ☒ |
| Occurrence Limit of Liability Endorsement | ASPPR001 | 10/04 | ☒ |
| Common Policy Conditions | IL 00 17 | 11/98 | ☒ |
| Commercial Property Conditions | CP 00 90 | 07/88 | ☒ |
| Condominium Association Coverage Form | CP 00 17 | 04/02 | ☐ |
| Business Income (with Extra Expense) | CP 00 30 | 04/02 | ☐ |
| Business Income (without Extra Expense) | CP 00 32 | 04/02 | ☒ |
| Causes of Loss – Special Form | CP 10 30 | 04/02 | ☒ |
| Exclusion of Certain Computer Related Losses | IL 09 35 | 07/02 | ☒ |
| Protective Safeguards | IL 04 15 | 04/98 | ☐ |
| Flood Coverage Endorsement | CP 10 65 | 10/00 | ☐ |
| Earthquake Coverage Endorsement | CP 10 45 | 08/99 | ☒ |
| Electronic Data Endorsement | NMA 2915 | 01/01 | ☒ |
| Exclusion of War, Military Action & Terrorism | ASPPR003 | 02/04 | ☒ |
| Earned Premium Endorsement | ASPPR005 | 04/04 | ☒ |
| Service of Suit | ASPCO002 | 04/05 | ☒ |
| Biological or Chemical Materials Exclusion | NMA2962 | 06/03 | ☐ |
| Coverage for Certified Acts of Terrorism | IL0950 | 11/02 | ☐ |
| Ordinance or Law Coverage | CP 04 05 | 04/02 | ☒ |
| Florida Statute Ch. 0718 Section III Exclusion | Manuscript | | |

[3] Coverage forms listed do not apply to this policy unless the associated box is checked

99 High Street | Boston , Massachusetts | 02110 | Phone 617-531-5100 | Fax 617-531-5114

ASPEN SPECIALTY 000044

## OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

It is understood and agreed that the following special terms and conditions apply to this policy:

1. Any loss paid hereunder as respects one occurrence shall not reduce the Limits(s) of Liability applicable to any other "Occurrence" except for those perils to which an annual aggregate limit applies. Where an aggregate loss limit applies, such amount shall be the maximum payable by us as respects all loss or damage arising out of such peril during the policy period irrespective of the number of "Occurrences". If the Limit of Liability is expressed as a portion of the layer, then our liability shall be proportional throughout such layer.

   In each case of loss or damage covered by this policy, we shall not be liable unless the Insured sustains covered loss and/or damage in a single "Occurrence" in excess of the applicable retention or deductible amount and then shall be liable up to a maximum of the smallest applicable Limit of Liability.

   When the policy covers more than one location, the Limit of Liability shall apply against the total loss or damage to all locations covered by this Policy in any one "Occurrence".

   The term "Occurrence(s)" shall mean any one loss, disaster, or series of losses, arising out of one event. One event shall be considered to be all losses arising during a continuous period of 72 hours. When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the first loss to any covered property occurs. An "Occurrence" must commence during the policy period and cause direct physical loss or physical damage to covered property, that is neither expected nor intended by the Insured, and the Limit of Liability and retention/deductible amount applicable to such "Occurrence" shall be those in effect at the time of commencement of such event or continuous or repeated exposure conditions. With respect to any event or exposure to conditions relating to or arising out of any interest in any property or entity, or relating to or arising out of such property or entity, acquired by an Insured, the inception date with respect thereto shall be no earlier than the time of such acquisition (except that this shall not affect coverage otherwise in effect in writing entered into prior to loss or damage). Under no circumstance shall any one "Occurrence" implicate coverage under this policy and any other prior or subsequent property insurance policy issued by us for the Insured.

2. The premium for this policy is based upon the statement of values on file with us, or attached to this policy. In the event of loss, hereunder, our liability, which is subject to terms of paragraph 1. above, shall be limited to the least of the following:

   a.  The actual adjusted amount of loss, less applicable deductibles(s).
   b.  The value stated on the schedule of locations on file with us, less applicable deductible(s).
   c.  The Limit of Liability, or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

ASPPR001 10/04

ASPEN SPECIALTY 000045

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

ASPEN SPECIALTY 000046

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

### B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

### C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and

2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

### E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

### F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

### H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:

   a. During the policy period shown in the Declarations; and

   b. Within the coverage territory.

2. The coverage territory is:

   a. The United States of America (including its territories and possessions);

   b. Puerto Rico; and

   c. Canada.

ASPEN SPECIALTY 000047

I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

    Copyright, ISO Commercial Risk Services, Inc., 1983, 1987    CP 00 90 07 88    □

ASPEN SPECIALTY 000048

COMMERCIAL PROPERTY
CP 00 17 04 02

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section H. – Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, A.1., and limited in A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. **Building**, meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, outside of individual units, including outdoor fixtures;

(3) Permanently installed:

    (a) Machinery and

    (b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

    (a) Fire extinguishing equipment;

    (b) Outdoor furniture;

    (c) Floor coverings; and

    (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

(5) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

(6) Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

    (a) Fixtures, improvements and alterations that are a part of the building or structure; and

    (b) Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph A.1.a.(6) above.

b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

(1) Personal property owned by you or owned indivisibly by all unit-owners;

(2) Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

(3) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

© ISO Properties, Inc., 2001

ASPEN SPECIALTY 000049

c. Personal Property Of Others that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, back filling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground if there is no basement.

h. Land (including land on which the property is located), water, growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

q. The following property while outside of buildings:

(1) Grain, hay, straw or other crops; or

© ISO Properties, Inc., 2001

CP 00 17 04 02   □

ASPEN SPECIALTY 000050

(2) Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

a. **Debris Removal**

(1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(3) Subject to the exceptions in Paragraph (4), the following provisions apply:

(a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

(b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

(4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

(5) **Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| | | |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 50,000 |
| | | |
| Amount of Loss Payable | $ | 49,500 |
| | ($50,000 − $500) | |
| Debris Removal Expense | $ | 10,000 |
| | | |
| Debris Removal Expense | | |
| Payable | . $ | 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | ($80,000 − $500) | |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense | | |
| Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

ASPEN SPECIALTY 000051

The basic amount payable for debris removal expense under the terms of Paragraph (3) is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph (4), because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph (4). Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

© ISO Properties, Inc., 2001

CP 00 17 04 02

ASPEN SPECIALTY 000052

(5) Under this Additional Coverage, we will not pay for:

  (a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  (b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

  (a) We will not pay for the Increased Cost of Construction:

    (i) Until the property is actually repaired or replaced, at the same or another premises; and

    (ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  (b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

  (c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

f. Electronic Data

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage -- Electronic Data, subject to the following:

  (a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

  (b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

ASPEN SPECIALTY 000053

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. Newly Acquired Or Constructed Property

(1) Buildings

You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) Your Business Personal Property

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

© ISO Properties, Inc., 2001
CP 00 17 04 02

ASPEN SPECIALTY 000054

(3) Period Of Coverage

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

b. Personal Effects And Property Of Others

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

c. Valuable Papers And Records (Other Than Electronic Data)

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

(4) Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

d. Property Off-Premises

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate;

(b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c) At any fair, trade show or exhibition.

ASPEN SPECIALTY 000055

(2) This Extension does not apply to property:

   (a) In or on a vehicle; or

   (b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

   (a) The trailer is used in your business;

   (b) The trailer is in your care, custody or control at the premises described in the Declarations; and

   (c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

   (a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

   (b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

© ISO Properties, Inc., 2001

CP 00 17 04 02

ASPEN SPECIALTY 000056

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100
−     250
$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1:     $70,000
  (exceeds Limit of Insurance plus Deductible)
Loss to Bldg. 2:     $90,000
  (exceeds Limit of Insurance plus Deductible)
Loss Payable – Bldg. 1:     $60,000
  (Limit of Insurance)
Loss Payable – Bldg. 2:     $80,000
  (Limit of Insurance)
Total amount of loss payable: $140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

© ISO Properties, Inc., 2001

ASPEN SPECIALTY 000057

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. Loss Payment

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

5. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. Unit-Owner's Insurance

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

7. Vacancy

a. Description Of Terms

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in (1)(a) and (1)(b) below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

© ISO Properties, Inc., 2001   CP 00 17 04 02   □

ASPEN SPECIALTY 000058

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

  (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

  (ii) Used by the building owner to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

  (a) Vandalism;

  (b) Sprinkler leakage, unless you have protected the system against freezing;

  (c) Building glass breakage;

  (d) Water damage;

  (e) Theft; or

  (f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in b.(1)(a) through b.(1)(f) above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

8. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in b., c. and d. below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

  (1) Awnings or floor coverings;

  (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

  (3) Outdoor equipment or furniture.

c. Glass at the cost of replacement with safety glazing material if required by law.

9. Waiver Of Rights Of Recovery

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

  (1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

  (2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

  (3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

  (4) Subtract the deductible from the figure determined in Step (3).

 © ISO Properties, Inc., 2001

ASPEN SPECIALTY 000059

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

When:

| | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1): $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $100,000 ÷ $200,000 = .50

Step (3): $40,000 x .50 = $20,000

Step (4): $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When:

| | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:

| | | |
|---|---|---|
| The value of property is: | | |
| Bldg. at Location No. 1 | $ | 75,000 |
| Bldg. at Location No. 2 | $ | 100,000 |
| Personal Property at Location No. 2 | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is | | 90% |

| | | |
|---|---|---|
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| The Deductible is | $ | 1,000 |
| The amount of loss is: | | |
| Bldg. at Location No. 2 | $ | 30,000 |
| Personal Property at Location No. 2 | $ | 20,000 |
| | $ | 50,000 |

Step (1): $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2): $180,000 ÷ $225,000 = .80

Step (3): $50,000 x .80 = $40,000

Step (4): $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

2. **Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

© ISO Properties, Inc., 2001

ASPEN SPECIALTY 000060

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

G. Optional Coverages

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. Agreed Value

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. Inflation Guard

a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

Example:

| If: | | | |
|---|---|---|---|
| The applicable Limit of Insurance is | $ | 100,000 | |
| The annual percentage Increase is | | 8% | |
| The number of days since the beginning of the policy year (or last policy change) is | | 146 | |
| The amount of Increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 | |

3. Replacement Cost

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence; or

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit owners, and the property covered under Paragraph A.1.a.(6) of this Coverage Form, are not considered to be the personal property of others.

CP 00 17 04 02                    © ISO Properties, Inc., 2001                    Page 13 of 14

ASPEN SPECIALTY 000061

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

4. Extension Of Replacement Cost To Personal Property Of Others

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph 3.b.(1) of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

H. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

© ISO Properties, Inc., 2001

CP 00 17 04 02      □

ASPEN SPECIALTY 000062

COMMERCIAL PROPERTY
CP 10 30 04 02

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section F. – Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section **B.**, Exclusions; or

2. Limited in Section **C.**, Limitations;

that follow.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   a. **Ordinance Or Law**

   The enforcement of any ordinance or law:

   (1) Regulating the construction, use or repair of any property; or

   (2) Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   (1) An ordinance or law that is enforced even if the property has not been damaged; or

   (2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   b. **Earth Movement**

   (1) Earthquake, including any earth sinking, rising or shifting related to such event;

   (2) Landslide, including any earth sinking, rising or shifting related to such event;

   (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   (a) Airborne volcanic blast or airborne shock waves;

   (b) Ash, dust or particulate matter; or

   (c) Lava flow.

   All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

   Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   c. **Governmental Action**

   Seizure or destruction of property by order of governmental authority.

   But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

        © ISO Properties, Inc., 2001          □

ASPEN SPECIALTY 000063

d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. Utility Services

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph B.4.a.(1) applies to these coverages.

f. War And Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. Water

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in g.(1) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

h. "Fungus", Wet Rot, Dry Rot And Bacteria

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage — Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions B.1.a. through B.1.h. apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d.(1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

          © ISO Properties, Inc., 2001          CP 10 30 04 02     □

ASPEN SPECIALTY 000064

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

    (a) Dampness or dryness of atmosphere;

    (b) Changes in or extremes of temperature; or

    (c) Marring or scratching.

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    (1) You do your best to maintain heat in the building or structure; or

    (2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    (1) Acting alone or in collusion with others; or

    (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

 © ISO Properties, Inc., 2001

ASPEN SPECIALTY 000065

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

(2) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(4) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(6) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph B.1.a. Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph B.1.a., Ordinance Or Law;

(b) Paragraph B.1.c., Governmental Action;

(c) Paragraph B.1.d., Nuclear Hazard;

(d) Paragraph B.1.e., Utility Services; and

(e) Paragraph B.1.f., War And Military Action.

 © ISO Properties, Inc., 2001 CP 10 30 04 02   □

ASPEN SPECIALTY 000066

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

(2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

(1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

(2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

a. Animals, and then only if they are killed or their destruction is made necessary.

b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

(1) Glass; or

(2) Containers of property held for sale.

c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

ASPEN SPECIALTY 000067

However, this limitation does not apply:

(1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.3., does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

D. Additional Coverage – Collapse

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in D.1. through D.5. below.

1. With respect to buildings:

a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

d. Weight of people or personal property;

e. Weight of rain that collects on a roof;

© ISO Properties, Inc., 2001

CP 10 30 04 02

ASPEN SPECIALTY 000068

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in 2.a. through 2.e., we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in 1.a. through 1.d. do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in 2.a., 2.d. and 2.e.

3. With respect to the following property:

a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls; and

i. Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in 2.b. through 2.f., we will pay for loss or damage to that property only if:

a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse was caused by a Cause of Loss listed in 2.a. through 2.f. above;

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in 3. above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph 4. does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria

1. The coverage described in E.2. and E.6. only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under E.2. of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

ASPEN SPECIALTY 000069

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph F.2. (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage – Collapse.

6. The following, 6.a. or 6.b., applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

F. Additional Coverage Extensions

1. Property In Transit

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. Water Damage, Other Liquids, Powder Or Molten Material Damage

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. Glass

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

© ISO Properties, Inc., 2001     CP 10 30 04 02     □

ASPEN SPECIALTY 000070

b. We will pay for expenses incurred to re-
move or replace obstructions when repair-
ing or replacing glass that is part of a build-
ing. This does not include removing or re-
placing window displays.

This Coverage Extension, F.3., does not in-
crease the Limit of Insurance.

G. Definitions

1. "Fungus" means any type or form of fungus,
including mold or mildew, and any mycotoxins,
spores, scents or by-products produced or re-
leased by fungi.

2. "Specified Causes of Loss" means the follow-
ing: Fire; lightning; explosion; windstorm or hail;
smoke; aircraft or vehicles; riot or civil commo-
tion; vandalism; leakage from fire extinguishing
equipment; sinkhole collapse; volcanic action;
falling objects; weight of snow, ice or sleet; wa-
ter damage.

a. Sinkhole collapse means the sudden sink-
ing or collapse of land into underground
empty spaces created by the action of water
on limestone or dolomite. This cause of loss
does not include:

(1) The cost of filling sinkholes; or

(2) Sinking or collapse of land into man-
made underground cavities.

b. Falling objects does not include loss or
damage to:

(1) Personal property in the open; or

(2) The interior of a building or structure, or
property inside a building or structure,
unless the roof or an outside wall of the
building or structure is first damaged by
a falling object.

c. Water damage means accidental discharge
or leakage of water or steam as the direct
result of the breaking apart or cracking of a
plumbing, heating, air conditioning or other
system or appliance (other than a sump
system including its related equipment and
parts), that is located on the described
premises and contains water or steam.

© ISO Properties, Inc., 2001

ASPEN SPECIALTY 000071

IL 09 35 07 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

A. We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

a. Any of the following, whether belonging to any insured or to others:

(1) Computer hardware, including micro-processors;

(2) Computer application software;

(3) Computer operating systems and related software;

(4) Computer networks;

(5) Microprocessors (computer chips) not part of any computer system; or

(6) Any other computerized or electronic equipment or components; or

b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph A.1.a. of this endorse-ment;

due to the inability to correctly recognize, proc-ess, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph A.1. of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

1. In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

2. Under the Commercial Property Coverage Part:

a. In a "Specified Cause of Loss", or in eleva-tor collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

b. In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", eleva-tor collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modifi-cation of any items in Paragraphs A.1.a. and A.1.b. of this endorsement to correct any deficien-cies or change any features.

© ISO Properties, Inc., 2001

ASPEN SPECIALTY 000072

INTERLINE
IL 04 15 04 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

### SCHEDULE*

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| As per Schedule on File with Company | | P-9 |

* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

A. The following is added to the:
Commercial Property Conditions
General Conditions in the
Farm Property – Other Farm
Provisions Form – Additional Coverages,
Conditions, Definitions
General Conditions in the Mobile Agricultural
Machinery and Equipment Coverage Form
General Conditions in the Livestock Coverage
Form

PROTECTIVE SAFEGUARDS

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

"P-1" Automatic Sprinkler System, including related supervisory services.

Automatic Sprinkler System means:

a. Any automatic fire protective or extinguishing system, including connected:

(1) Sprinklers and discharge nozzles;

(2) Ducts, pipes, valves and fittings;

(3) Tanks, their component parts and supports; and

(4) Pumps and private fire protection mains.

b. When supplied from an automatic fire protective system:

(1) Non-automatic fire protective systems; and

(2) Hydrants, standpipes and outlets.

"P-2" Automatic Fire Alarm, protecting the entire building, that is:

a. Connected to a central station; or

b. Reporting to a public or private fire alarm station.

"P-3" Security Service, with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

"P-4" Service Contract with a privately owned fire department providing fire protection service to the described premises.

"P-9" The protective system described in the Schedule.

Copyright, Insurance Services Office, Inc., 1997

ASPEN SPECIALTY 000073

B. The following is added to the EXCLUSIONS section of:

CAUSES OF LOSS – BASIC FORM
CAUSES OF LOSS – BROAD FORM
CAUSES OF LOSS – SPECIAL FORM
MORTGAGE HOLDERS ERRORS AND OMISSIONS COVERAGE FORM
STANDARD PROPERTY POLICY
CAUSES OF LOSS FORM – FARM PROPERTY
MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
LIVESTOCK COVERAGE FORM

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

Copyright, Insurance Services Office, Inc., 1997

IL 04 15 04 98

ASPEN SPECIALTY 000074

ELECTRONIC DATA ENDORSEMENT

1. Electronic Data Exclusion

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

a) This policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS)
or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing
for electronically controlled equipment and includes programs, software and other coded instructions
for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to "Trojan Horses," "worms" and "time or logic bombs".

b) However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

Listed Perils

Fire
Explosion

2. Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this policy, then the basis of valuation shall be the cost of the blank media plus the costs of copying the ELECTRONIC DATA from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

NMA 2915 (25.1.01)
Form approved by Lloyd's Underwriters' Non-Marine Association Limited

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM (WITH LIMITED EXCEPTION) AND EXCLUSION OF WAR AND MILITARY ACTION

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

A. The War And Military Action Exclusion is replaced by the following Exclusion. With respect to any Coverage Form to which the War And Military Action Exclusion does not apply, that Exclusion is hereby added as follows:

WAR AND MILITARY ACTION EXCLUSION

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

1. War, including undeclared or civil war;

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

With respect to any action that comes within the terms of this exclusion and involves nuclear reaction or radiation, or radioactive contamination, this War And Military Action Exclusion supersedes the Nuclear Hazard Exclusion.

B. Regardless of the amount of damage and losses, the Terrorism Exclusion applies to any incident of terrorism that involves the use, release or escape of pathogenic or poisonous biological or chemical materials or of nuclear materials, or to any incident that directly or indirectly results in nuclear reaction or radiation or radioactive contamination.

In incidents of terrorism other than those described in the preceding sentence, the Terrorism Exclusion will not apply unless the damage to all types of property (in the United States, its territories and possessions, Puerto Rico and Canada), sustained by all persons and entities affected by the terrorism (and including business interruption losses sustained by owners or occupants of such damaged property), all whether or not insured, exceeds a total of $25,000,000, attributable to a single incident of terrorism or to multiple incidents which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership.

TERRORISM EXCLUSION

We will not pay for loss or damage caused directly or indirectly by terrorism, including action in hindering or defending against an actual or expected incident of terrorism. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

Terrorism means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence;

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

ASPEN SPECIALTY 000076

b. It appears that the intent is to intimidate or
coerce a government, or to further political,
ideological, religious, social or economic ob-
jectives or to express (or express opposition
to) a philosophy or ideology.

But with respect to any such activity that also
comes within the terms of the War And Military Ac-
tion Exclusion, that exclusion supersedes this Ter-
rorism Exclusion.

In the event of an act of terrorism that involves nu-
clear reaction or radiation, or radioactive contami-
nation, this Terrorism Exclusion supersedes the
Nuclear Hazard Exclusion.

ASPPR003 0204

ASPEN SPECIALTY 000077

Earned Premium Endorsement

For locations in Tier I coastal counties from Texas to Maine, and for all of the state of Florida, if you cancel this policy, or remove a location, or reduce the coverage limits on a location and coverage existed any time during the period of June 1st to November 1st then we will not return any premium. Also, if such a referenced location is added during the term of the policy and coverage exists at any time during the period of June 1st to November 1st, the rate will be calculated as 100% of the annual rate; otherwise it shall be pro rata.

Coverage cannot be increased, nor additional locations added, if a named storm is in force, unless specifically accepted by the underwriter.

This endorsement replaces any short rate provisions stipulated in this policy for these referenced locations.

ASPPR005 0404

ASPEN SPECIALTY 000078

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

# GENERAL SERVICE OF SUIT ENDORSEMENT

This endorsement modifies insurance provided under the following:
ALL COVERAGE PARTS IN THIS POLICY

Pursuant to any statute of any state or district of the United States of America which makes provision therefore, the insurer hereby designates the commissioner, superintendent or director of insurance or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies in the state where this policy is issued, as the insurer's true and lawful attorney for service of legal process in action, suit or proceeding brought in the state where this policy is issued by or on behalf of an insured or beneficiary against the insurer arising out of the insurance issued under this policy. Any legal process received by such attorney for service of legal process shall be forwarded, except in the states below to: Aspen Specialty Insurance Company, 99 High Street, Suite 3200, Boston MA 02110 (617) 531-5100 and (617) 531-5114 fax.

In Arizona, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. John Rohwer, John Rohwer & Company, P.O. Box 2229, Phoenix, AZ 85002.

In California, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. Ron Benigno, Executive Vice President, MTS Insurance Services, 1551 N.Tustin Ave., Suite 700 Santa Ana, CA 92705.

In Colorado, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Kent Strong, Branch Manager, Swett & Crawford, 2260 South Xanadu Way, Suite 330, Aurora, CO 80014.

In Georgia, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. Neal Abernathy, Executive Vice President & Branch Manager, Swett & Crawford, 3715 Northside Parkway, Suite 800, Atlanta Georgia 30327.

In Louisiana, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. Lyle Kirmis, Zuger Kirmis & Smith, 316 North 5th Street, Provident Building, P.O. Box 1695, Bismarck, ND 58502-1695.

In Maine, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. Peter Dumas, Branch Manager, Swett & Crawford, 324 Gannett Drive, Suite 200, South Portland, Maine 04106.

In Michigan, any legal process received by such attorney for service of legal process may also be delivered or forwarded to: Mr. Jim Walker, Branch Manager, Swett & Crawford, 1760 South Telegraph Road, Suite 200, Bloomfield Hills, MI 48302.

The foregoing designation of attorney for service of legal process upon the Company shall not constitute a waiver of the Company's rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

ASPCO002 0405

## Biological or Chemical Materials Exclusion

It is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

NMA2962
06/02/03
Form approved by Lloyd's Market Assocation (Non-Marine)

ASPEN SPECIALTY 000080

## FLORIDA STATUTE CH. 0718 SECTION 111 EXCLUSION

In concurrence with Florida Statute Ch. 0718 Section 111, effective January 1, 2004 the following items will be excluded from coverage:

Unit floor, wall and ceiling coverings, electrical fixtures, appliances, air conditioning and heating equipment, water heaters, water filters, built-in cabinets, countertops, window treatments including curtains, drapes, blinds, hardware and other window treatment components, or replacements of any of these items which are located within the boundary of the unit and serve only one unit and unit air conditioning equipment that services only a single unit, whether or not it is located within the unit.

Florida Statute Ch. 0718 Section 111 Exclusion Manuscript

ASPEN SPECIALTY 000081



ASPEN
ASPEN SPECIALTY

## CHANGE ENDORSEMENT

It is agreed and understood that:

☐ Premium
☐ Deposit Premium
☐ Minimum Premium
☐ Rate
☐ Installment
☐ Audit
☐ Is charged for the Period
☐ Coverage
☐ Inception Date
☐ Expiration Date
☐ Terms

☐ Name of Insured
☒ Address of Insured
☐ Amended to read as follows
☐ Coverage is Cancelled
   ☐ Short Rate
   ☐ Pro Rate
   ☐ Minimum Premium Applies
☐ Additional Insured but only as respects the
   Operations of the Named Insured

☐ Other

The Insured's mailing address is being amended to read as follows:

Royal Palm Place at the Hammocks Condo Association
c/o Regatta Real Estate Management Inc.
309 23rd Street
Suite 300
Miami Beach, FL  33139


*ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED*


Policy Number: PP 000456                    Endorsement #  1
Named Insured: Royal Palm Place at the Hammocks Condo Association
Effective Date: 9/6/2005
Additional Premium: NIL

ASP PR008

ASPEN SPECIALTY 000082



A S P E N

ASPEN SPECIALTY

## CHANGE ENDORSEMENT

☐ Premium
☐ Deposit Premium
☐ Minimum Premium
☐ Rate
☐ Installment
☐ Audit
☐ Is charged for the Period
☐ Coverage
☐ Inception Date
☒ Expiration Date
☐ Terms

☐ Name of Insured
☐ Address of Insured
☐ Amended to read as follows
☐ Coverage is Cancelled
   ☐ Short Rate
   ☐ Pro Rate
   ☐ Minimum Premium Applies
☐ Additional Insured but only as respects the
   Operations of the Named Insured

☐ Other

In consideration of an additional premium specified below, it is understood and agreed that the policy is *extended* to expire *July 4, 2006*.

*ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED*

Policy Number:   PP000456                    Endorsement # 2
Named Insured:   Royal Palm Place at the Hammocks Condo Association
Effective Date:   June 8, 2006
Additional Premium: 12,830

ASP PR008

ASPEN SPECIALTY 000083

**Aspen Specialty Insurance Company**
600 Atlantic Ave, Floors 20 & 21
Boston, MA  02110

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

March 15, 2007

The Public Adjusting Firm, Inc.
Royal Palm Place at the Hammocks Condominium Association.
c/o Miami Management Inc
ATTENTION:  Mrs. Christina Gotey
13055 Bird Road, Suite 204
Miami, FL  33175

RE:

| | |
|---|---|
| Insured: | Royal Palm Place at the Hammocks Condominium Association. |
| DOL: | 10/24/05 |
| Policy #: | PP000456 |
| Claim #: | P001323 |
| Location: | 15750 SW 105 Terrace – Miami, Fl  33196 |

Dear Mrs. Gotey:

As you are aware ACM, Inc. is the authorized representative for Aspen Specialty Insurance Company relative to the above captioned occurrence.  Aspen Specialty Insurance Company is the Insurance carrier for the property at the location noted above for the policy period 06/02/2005 – 06/02/2006, subject to the provisions and exclusions of said policy.

We received your letter of representation by fax on March 2, 2007.  Due to the late reporting of this loss we must now direct your attention to the policy language outlined in your Commercial Property Coverage form CP0017 as follows.

**3. Duties In The Event Of Loss Or Damage**

    a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Give us prompt notice of the loss or damage. Include a description of the property involved.

      (2) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (3) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      (4) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

      (5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

      Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

1



ASPEN SPECIALTY 000232

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

At this time it appears that you have not complied with two, three, four, five, six, seven and eight above. We must advise you that the duties listed above are required in order to present a claim against the referenced insurance policy.

We formally request the following documentation in order to proceed with this loss:

1. Please provide a copy of any estimates in your possession which address damages related to this claim.
2. Please provide copies of all invoices for repair, proofs of payment for repair or other records of damage related to the current claim.
3. All records related to any maintenance requests at this complex for the period from January 2004 to December 2006.
4. The name and address of the current property manager and maintenance supervisor for this site.
5. The name and address of the property manager, property managing firm, and maintenance supervisor employed by the insured at the time of the loss.
6. The name, address and phone number of the accounting firm, trustee or other entity which is obligated to keep all the financial records related to this complex.
7. The name and address of any firm which is responsible for tax preparation and document preservation for this complex.
8. Please identify the contractors that have performed any services associated with claim related repairs from the date of loss to the present.
9. Please supply a copy of any contracts or agreements which the insured has entered into for claim related repairs.
10. Please identify the current association president and all member of the current governing body of the association.  Please provide their individual names, addresses and phone numbers.
11. Please provide us with photos of the damages you are claiming.

We believe this information is required in order for Aspen Specialty to understand the nature and extent of the insured's claim.

Once we have received the information listed above we will contact you if we feel that an examination under oath of the property manager, association president or any other individuals associated with this insured are required.

We request that you provide the above listed information by May 18th, 2007.  If we have not received your response by that date we will assume that you and the insured are no longer pursuing this claim and subsequently close our file.

2

ASPEN SPECIALTY 000233

We must advise you that Aspen Specialty Insurance Company continues to reserves its rights for any and all claims arising out of this incident.  Any action taken by Aspen Specialty Insurance Company concerning this loss is not to be construed as a waiver of any additional policy terms and conditions.  The company expressly reserves all rights and privileges it may have under the subject policy.

Thank you in advance for your cooperation and we look forward to receiving your response.  Please call me at the numbers listed below if you have any questions or further information.

Sincerely,

*Debbie Hauskin*
ACM, Inc.
(704) 485-8975 – Office
(704) 973-9303 -  Fax

3

ASPEN SPECIALTY 000234

Aspen Specialty Insurance Company
600 Atlantic Ave, Floors 20 & 21
Boston, MA  02110

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

June 5, 2007

The Public Adjusting Firm, Inc.
Royal Palm Place at the Hammocks Condominium Association.
c/o Miami Management Inc
ATTENTION: Mrs. Christina Gotey
13055 Bird Road, Suite 204
Miami, FL  33175

RE:

| | | |
|---|---|---|
| Insured: | Royal Palm Place at the Hammocks Condominium Association. |
| DOL: | 10/24/05 |
| Policy #: | PP000456 |
| Claim #: | P001323 |
| Location: | 15750 SW 105 Terrace – Miami, Fl  33196 |

Dear Mrs. Gotey:

As you are aware ACM, Inc. is the authorized representative for Aspen Specialty Insurance Company relative to the above captioned occurrence.  Aspen Specialty Insurance Company appears to be the Insurance carrier for the property at the location noted above for the policy period 06/02/2005 – 06/02/2006, subject to the provisions, limitations and exclusions of said policy.

Upon receipt of your letter of representation on March 2, 2007 we called you and discussed this claim at length.  We followed up this conversation with a document request letter on March 6, 2007.

In this letter we cited the policy language that is part of the relevant coverage form CP0017 0402:

**3. Duties In The Event Of Loss or Damage**

　　a.　You must see that the following are done in the event of loss or damage to Covered Property:

　　　　(1)　Notify the police if a law may have been broken.

　　　　(2)　Give us prompt notice of the loss or damage. Include a description of the property involved.

　　　　(3)　As soon as possible, give us a description of how, when and where the loss or damage occurred.

　　　　(4)　Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

　　　　(5)　At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

　　　　(6)　As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

1

**EXHIBIT**

**3**

tabbies®

ASPEN SPECIALTY 000235

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

We advised that at the time it appeared that the insured had failed to meet several of the duties listed above. We also advised you that the duties listed above were required in order to present a claim against the referenced insurance policy.

In our letter of March 6, 2007 we formally requested the following documentation in order to proceed with this loss:

1. Please provide a copy of any estimates in your possession which address damages related to this claim.
2. Please provide copies of all invoices for repair, proofs of payment for repair or other records of damage related to the current claim.
3. All records related to any maintenance requests at this complex for the period from January 2004 to December 2006.
4. The name and address of the current property manager and maintenance supervisor for this site.
5. The name and address of the property manager, property managing firm, and maintenance supervisor employed by the insured at the time of the loss.
6. The name, address and phone number of the accounting firm, trustee or other entity which is obligated to keep all the financial records related to this complex.
7. The name and address of any firm which is responsible for tax preparation and document preservation for this complex.
8. Please identify the contractors that have performed any services associated with claim related repairs from the date of loss to the present.
9. Please supply a copy of any contracts or agreements which the insured has entered into for claim related repairs.
10. Please identify the current association president and all member of the current governing body of the association. Please provide their individual names, addresses and phone numbers.
11. Please provide information regarding all insurance policies for physical damage secured by the insured from 2003 through 2006
12. Please provide us with any photos showing the condition of the location immediately following the loss, the current condition of the site, and photos of any areas which have been repaired.

We believed and still believe that this information is required in order for Aspen Specialty to understand the nature and extent of the insured's claim. This list is not and was not intended to be exhaustive of all documentation which may be required to present this claim. We advised that we may need to request further information as the claim developed.

2

ASPEN SPECIALTY 000236

We requested that you provide the above listed information by May 18th, 2007. We further advised that if we had not received your response by that date we will assume that you and the insured are no longer pursuing this claim and subsequently close our file.

As of the date of this letter we have received none of the requested information. In addition we have not received any responses to any of our attempts to make contact with you. We must conclude that the insured is no longer pursuing this claim and as such we are moving to close our file at this time.

We must advise you that Aspen Specialty Insurance Company continues to reserve its rights for any and all claims arising out of this incident. Any action taken by Aspen Specialty Insurance Company concerning this loss is not to be construed as a waiver of any additional policy terms and conditions. The company expressly reserves all rights and privileges it may have under the subject policy.

If you have any questions related to this matter or information which would change this determination please contact us at the phone number below.

Sincerely,
Wayne Marks
ACM, Inc.
(704) 485-8975 – Office
(704) 973-9303 -  Fax

cc:     Anthony Anniello – Aspen Specialty Insurance

3

ASPEN SPECIALTY 000237

**Aspen Specialty Insurance Company**
600 Atlantic Ave, Floors 20 & 21
Boston, MA  02110

### VIA CERTIFIED MAIL - RETURN RECEIPT REQUESTED

December 7, 2007

Royal Palm Place at the Hammocks Condominium Association
Jorge Rodriguez—Association President
15750 SW 105 Terrace
Miami, FL  33196

**REFERENCE:**

| | |
|---|---|
| Insured: | Royal Palm Place at the Hammocks Condominium Association |
| Policy No.: | PP000456 |
| Claim No.: | P001323 |
| Date of Loss: | 10/24/2005 |

Dear Mr. Rodriguez:

As you are aware ACM, Inc. is the authorized representative for Aspen Specialty Insurance Company relative to the above captioned occurrence.  Aspen Specialty Insurance Company is the insurance carrier for the property at the location noted above for the policy period 06/02/2005 to 06/02/2006, subject to the provisions and exclusions of said policy.

ACM, Inc's assignment in this matter is to evaluate any damages sustained at the insured site as a result of Hurricane Wilma.

Previously, in our letters directed to your representing public adjuster, Christina Gotey of The Public Adjusting Firm, Inc (dated 03/16/2007 and 06/05/2007), we requested information and documentation that we felt was vital to our ability to understand and evaluate any claims presented for Hurricane Wilma damages at the insured site.  As of the date of this letter, none of the requested information or documentation has been provided.  In fact, we have not received any claim demand or description of the damages.

We note that previously we had received a contract and letter of representation from "The Public Adjusting Firm" that identifies Ms. Christina Gotey as the representing public adjuster.  We also note that we have recently received another contract that identifies Tim Greene of Epic Group Public Adjusters as the representing public adjuster.  At this point, we request clarification of which public adjuster the association intends to utilize be provided.  We also will require written proof that one of the public adjuster contracts has been voided.  Please provide this information to us as soon as possible so that we may know which entity has been authorized to represent you in this matter.  We will be unable to discuss the details of this claim with either entity until this matter has been resolved.

As referenced above, we have not received a response to any of the information and documentation requests we made in our previous letters dated (03/16/2007 and 06/05/2007).  In order to gain a full understanding of this loss and all the issues which appear to be involved we request that Royal Palm Place at the Hammocks Condominium Association supply the following information:

**EXHIBIT**

**4**

tabbies

ASPEN SPECIALTY 000222

1. Please provide the following information related to the condominium association management:
    a. Identify all association presidents and members of the governing body of the association from January 2004 through July 2007. Please include their names, titles, addresses, phone numbers, and beginning and ending dates of their terms of service.
    b. The name and address, and phone number of the current property manager and maintenance supervisor for this site.
    c. The name, address and phone number of the property manager, property managing firm, and any maintenance personnel employed by Royal Palm Place at the Hammocks Condominium Association both at the date of this letter and at the time of loss.
    d. A copy of the bylaws of the association,
    e. Identify any other insurance policies secured by the association which were in place on the property from January 2005 to August 2007. Include the policy number, inception and expiration date, agent, and company, and property covered.
    f. Copies of all minutes, notes, and transcripts for all meetings of the governing body of the association which have occurred from January 2005 to August 2007.
    g. Copies of all memoranda, messages, notices, or any other correspondence between the association management, property managers, and/or public adjusters, and the individual unit owners.

2. Please provide the following accounting information:
    a. The name, address and phone number of the accounting firm, trustee, or other entity which is obligated to keep all the financial records related to this complex,
    b. The name, address, and phone number of any firm which is responsible for tax preparation and document preservation for this complex, and.
    c. Copies of all association bank statements from January 2005 to July 2007. Please identify those charges which are related to this claim.
    d. A general ledger report showing all transactions for each month from January 2005 to August 2007.
    e. Tax returns for the years 2004, 2005, 2006 for the association and if separately filed, for each building within the association.

3. Please provide the following information related to repairs and maintenance before and after the hurricane:
    a. All records related to any maintenance requests at this complex for the period from January 2004 to December 2006,
    b. Identity of any contractors that have done work or are planning to do work related to damage associated with this claim. Please include the owner/manager's name, firm name, address and phone number,
    c. Copies of any contracts entered into with these contractors, and
    d. Copies of any invoices for equipment purchases or emergency repairs undertaken immediately after the loss, and
    e. All contractor invoices, estimates, work orders, requests for service, maintenance contracts etc, which have either been received or paid for by the insured from January 2004 through August 2007.
    f. All estimates of damage which have been prepared on behalf of the association for damages due to this loss, from October 2005 through August 2007.
    g. All photographs, in any format or media, which have been taken by the association, its officers, its contractors, or its representatives of the buildings that are part of this

ASPEN SPECIALTY 000223

policy. Please identify the building, unit number, and specific item imaged in each photograph.

h. For all items supplied in support of the requests above, please identify each item that is a direct result of this loss.

i. A spreadsheet or inventory listing each individual invoice and item which the association is claiming as part of this loss and which building it is being submitted for.

j. Copies of all building permits for any repairs performed from 2004 to 2007.

k. Copies of any written correspondence between the condominium association, its officers, representatives, and contractors and local building departments, government authorities, or regulatory agencies from 2004 to 2007.

l. Copies of any expert analysis performed by engineers, architects, or other construction experts which supports the need for any repairs performed or planned associated with this claim.

4. Please supply each unit owner in all buildings with a copy of our (attached) Hurricane Damage Survey so we can identify and quantify the damage in each of these units.

5. Please send us the following information:
   a. The name, address and phone number of each unit owner, and
   b. Any photographs taken of the damages in each individual unit.
   c. A list of all owners that have filed claims against their own insurance policies.

6. A detailed spreadsheet totaling the total amount being claimed for each of the buildings located at this site.

We formally request that Royal Palm Place at the Hammocks Condominium Association supply a signed, sworn statement in proof of loss for each coverage that a claim is being filed against encompassing the full amount of that loss. This proof of loss must quantify the complete claim for damages and be supported by all the information which has been requested above. Please note that this is listed as duty number 7 below. Please find two copies of a blank proof of loss attached to this letter. We request that the insured provide the above listed information by February 5, 2008. Per policy conditions we have provided 60 days to meet this request.

Following review of this information we will advise you and the insured if it is necessary for Aspen Specialty Insurance Company to perform a full inspection of all insured property.

Upon receipt of the above requested information Aspen Specialty Insurance Company will schedule the examination under oath of the president, vice president and treasurer of Royal Palm Place at the Hammocks Condominium Association and its agents. We will also schedule the examination under oath of the individuals that held those positions at the time of the loss. As this documentation is expected in our offices prior to February 5, 2008, we currently expect the examinations under oath will be scheduled between February 7th and February 28th, 2007. We request that each person advise of their availability during this time frame.

In support of our requests above, we refer you to the following relevant portions of the policy, form CP0017 0402, which was in effect at the time of the loss:

3

*E: Loss Conditions*

*...3.Duties In The Event Of Loss Or Damage*

    *a. You must see that the following are done·in the event of loss or damage to Covered Property:*

      *(1) Notify the police if a law may have been broken.*

      *(2) Give us prompt notice of the loss or damage. Include a description of the property involved.*

      *(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.*

      *(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

      *(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

      *(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*

      *Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

      *(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

      *(8) Cooperate with us in the investigation or settlement of the claim.*

    *b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

Until we have an opportunity to receive and review the additional items requested above, we will not be able to fully evaluate any additional claim presented by you or your representatives. The information and documentation listed above is not considered to be an exhaustive list of all the information and documentation which may be needed to evaluate this loss. We will request other items as the need becomes apparent.

The information submitted by the insured in response to the requests above will form the basis and support of your signed and properly executed sworn statement in proof of loss. Please be advised that any assistance you may receive in presenting this information does not relieve you of any of their duties under this policy. We ask that you carefully review all information submitted in support of this claim as you are directly responsible for the accuracy of all such information.

Please be advised that any person who knowingly and with intent to defraud an insurance company or other person, files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any facts, thereto, commits a fraudulent insurance act, which is a crime and may be subject to criminal and/or civil penalties as well as rejection of benefit under this policy. With this in mind, we refer you and the insured to the following relevant portions of the policy, form CP0090 0788, which was in effect at the time of the loss.

*This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.*

4

ASPEN SPECIALTY 000225

}

### A. CONCEALMENT, MISREPRESENTATION OR FRAUD

*This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:*

*1. This Coverage Part;*

*2. The Covered Property;*

*3. Your interest in the Covered Property; or*

*4. A claim under this Coverage Part.*

Nothing in this letter should be construed as a denial of coverage or an indication of suspicion of wrongdoing on the part of the insured. As of this date we have seen no evidence of wrongdoing, in any fashion, on the part of the insured. This letter is intended only to allow Aspen Specialty Insurance Company to gather information to fully evaluate the claim which has been filed against this policy.

This letter is not intended to be an exhaustive listing of all of the terms, conditions, exclusions and other provisions of the policy that might possible serve to limit or preclude coverage. Aspen Specialty Insurance Company reserves the right to address any other coverage issues that might arise in the future under the terms, conditions, exclusions and provisions of the policy. For these and other reasons, Aspen Specialty Insurance Company continues to reserve its rights for any and all claims arising out of this incident. Any action taken by Aspen Specialty Insurance Company or anyone acting on their behalf concerning this loss is not to be construed as a waiver of any policy terms and conditions. The company expressly reserves all rights and privileges it may have under the subject policy.

It is our sincere hope that upon receipt of the information requested in this letter and completion of the noticed examinations under oath that we will be able to reach a mutually beneficial and satisfactory conclusion to this loss.

Thank you in advance for your cooperation and we look forward to receiving your response. Please call me at the numbers listed below if you have any questions, additional information, or suggestions regarding possible alternative methods to finalize this claim.

Please direct all written correspondence to the following address:

> Associated Claims Management, Inc
> PO Box 648
> Oakboro, NC 28129

Sincerely,
Fred Marks
ACM, Inc,
on behalf of Aspen Specialty Insurance
(O) (704) 485-8975
(F) (704) 973-9303
fred.marks@associatedclaimsinc.com

cc:     Anthony Anniello – Aspen Specialty

5

ASPEN SPECIALTY 000226

Swett & Crawford
200 NorthCreek, Suite #800
3718 Northside Parkway N.E.
Atlanta, GA 30327

The Public Adjusting Firm, Inc.
ATTENTION:  Mrs. Christina Gotey
13055 Bird Road, Suite 204
Miami, FL  33175

Mr. Marv Johnson
Epic Group Public Adjusters
490 Sawgrass Corporate Parkway
Unit 110
Sunrise, FL 33325

Courtesy Property Management
13250 SW 135 Ave.
Miami, FL  33186

6

ASPEN SPECIALTY 000227

## SWORN STATEMENT IN PROOF OF LOSS

| | |
|---|---|
| POLICY NO. | INS CLAIM NO. |
| POLICY TERM | AGENT/INSURANCE CO. |
| AMT OF BLDG/CONT COV AT TIME OF LOSS | AGENT ADDRESS |

TO:                                                                                      FOR:

At time of loss, by the above indicated policy of insurance, you insured the interested of:

against loss by _____ to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN          A _____ loss occurred about the hour of_____ o'clock _____ on the ____ day of _____
                                       the cause of the said loss was:

OCCUPANCY               The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose
                                       whatever:

INTEREST                    No other person or persons had any interests therin or encumbrance thereon, except:

1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is          _____
2. ACTUAL CASH VALUE of building structures                                                                                _____
3. ADD ACTUAL CASH VALUE OF CONTENTS or personal property insured                              _____
4. ACTUAL CASH VALUE OF ALL PROPERTY                                                                              _____
5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents)                                       _____
6. LESS APPLICABLE DEPRECIATION                                                                                         _____
7. ACTUAL CASH VALUE LOSS is                                                                                             _____
8. LESS DEDUCTIBLE                                                                                                             _____
9. LESS PREVIOUS PAYMENT                                                                                               _____
10. NET AMOUNT CLAIMED under above numbered policy is                                                  _____

The said loss did not originate by any act, design or procurement on the part of your insured, nothing has been done by or with the privity or consent of your insured to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property saved has in any manner been concealed, and no attempt to deceive the said insurer as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over to the insurer all rights, claims or interest that he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or advanced. He also hereby authorizes the insurer to sue any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who may be liable in damages to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

_____
                                                                                                   Insured

Subscribed and sworn before me this                    _____ day of

                                                                                 _____
                                                                                                   Notary Public

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL, THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

ASPEN SPECIALTY 000228

## SWORN STATEMENT IN PROOF OF LOSS

POLICY NO.

POLICY TERM

AMT OF BLDG/CONT COV AT
TIME OF LOSS

INS CLAIM NO.

AGENT/INSURANCE CO.

AGENT ADDRESS

TO:                                                                 FOR:

At time of loss, by the above indicated policy of insurance, you insured the interested of:

against loss by _____ to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached
thereto.

TIME AND ORIGIN          A _____ loss occurred about the hour of_____ o'clock ____ on the ____ day of _____
                         the cause of the said loss was:

OCCUPANCY               The premises described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose
                        whatever.

INTEREST                No other person or persons had any interests therin or encumbrance thereon, except:

1. FULL AMOUNT OF INSURANCE applicable to the property for which claim is presented is         _____
2. ACTUAL CASH VALUE of building structures                                                    _____
3. ADD ACTUAL CASH VALUE OF CONTENTS or personal property insured                             _____
4. ACTUAL CASH VALUE OF ALL PROPERTY                                                          _____
5. FULL COST OF REPAIR OR REPLACEMENT (Building and Contents)                                  _____
6. LESS APPLICABLE DEPRECIATION                                                               _____
7. ACTUAL CASH VALUE LOSS is                                                                  _____
8. LESS DEDUCTIBLE                                                                            _____
9. LESS PREVIOUS PAYMENT                                                                      _____
10. NET AMOUNT CLAIMED under above numbered policy is                                         _____

The said loss did not originate by any act, design or prcurement on the part of your insured, nothing has been done by or with the privity or consent of your insured to violate the
conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss, no property
saved has in any manner been concealed, and no attempt to deceive the said insurer as to the extent of said loss, has in any manner been made.  Any other information that may be
required will be furnished and considered a part of this proof.

Subrogation - To the extent of the payment made or advanced under this policy; the insured hereby assigns, transfers and sets over to the insurer all rights, claims or interest that
he has against any person, firm or corporation liable for the loss or damage to the property for which payment is made or advanced.  He also hereby authorizes the insurer to sue
any such third party in his name.

The insured hereby warrants that no release has been given or will be given or settlement or compromise made or agreed upon with any third party who may be liable in damages
to the insured with respect to the claim being made herein.

The furnishing of this blank or the preparation of proofs by a representative of the above insurer is not a waiver of any of its rights.

_____

_____
                                                    Insured

Subscribed and sworn before me this          _____ day of

                                             _____

                                             _____
                                                    Notary Public

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD AN INSURANCE COMPANY OR OTHER PERSON FILES A STATEMENT OF
CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION
CONCERNING ANY FACT MATERIAL, THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME.

# Damage Details Survey

Condominium Association _____

Unit #_____

Damage description: Please only include items which appeared or began during the storm on the date of loss hurricane.

Example:  Room: living room... Description of problem: water spot on ceiling

1. Room: _____   Description of problem: _____

2. Room: _____   Description of problem: _____

3. Room: _____   Description of problem: _____

4. Room: _____   Description of problem: _____

5. Room: _____   Description of problem: _____

6. Room: _____   Description of problem: _____

7. Room: _____   Description of problem: _____

8. Room: _____   Description of problem: _____

Did you file an insurance claim against your own insurance policy? YES_____ NO_____

If yes is selected, is that claim settled YES_____ NO_____

How much was the settlement $_____

Owners name:_____

Daytime number:_____

Evening number:_____

Email address:_____

We are currently preparing a schedule of inspections.  We can include in this claim only those units which we are able to inspect. We are unable to begin scheduling this inspection until we have received the unit owners completed damage surveys.  Once we have received these surveys we will advise your property manager/association president of a schedule for inspection.

Return this form to the property manager's office within 10-days.

Thank you,

ASPEN SPECIALTY 000230

From Epic Group Public Adjusters 1.954.343.1019                     Page 5 of 7

450 Sawgrass Corporate Parkway Unit 110
Sunrise, FL 33325
Office: 954-423-9600
Fax: 954-423-2255

February 05, 2008

ATTN:
Fred Marks
600 Atlantic Av, Floors 20&21
Boston, MA 02110

## SENT VIA FACSIMILE/EMAIL

704-973-9303

Re:
Insured:              Royal Palm Place
Policy No.:           PP000456
Claim No:               P001323
Insured Location:     15750 Sw 105 Terrace None
                      Miami, FL 33196

Dear Mr. Marks:
I am in receipt of your letter dated 12/7/07 (received at Epic Group 12/20/08.) Attached please find
the letter of release from *The Public Adjusting Firm, Inc.*

Please be advised that from the date of contract, Epic Group has been in preparation of it's estimate
of damages caused by Hurricane Wilma. To date it has not been completed as hoped. We feel that
it is partially due to the holidays (absentee owners- vacation) and seasonal owners. It has been
difficult to gain entry into these units and the estimate has been consequently delayed.

We expect to have it completed in the next few weeks. After it has been received from the
estimators and reviewed, we will provide you a copy.

In addition, due to this delay in the preparation of the estimate, your request for a signed proof of
loss must also be delayed for the above stated reasons. We will provide you the signed proof of loss
along with the estimate when completed.

Pg. 2.

In regards to request 1, 2, 3 , 4, 5 and 6, due to the massive amount of information and multiple
people involved the claim, the information requested is begin reviewed with the insured and
gathered to best of our ability.



EXHIBIT

5

tabbies'

ASPEN SPECIALTY 000196

From Epic Group Public Adjusters 1.954.343.1019                    Page 6 of 7

*Again, due to the large damage survey, holiday time of contract, estimating delays and massive amount of requested material, Epic Group on behalf of the insured, formally and respectfully request additional time to process and properly evaluate the claim caused by Hurricane Wilma.*

This also confirms that to date, Royal Palm at the Hammocks Condominium Assoc. has complied with all terms and conditions of the insurance policy and have or has cooperated fully with all of the insurer's demands, producing sufficient and adequate documentation at time of payment of insurance benefit, as well as undisputed or otherwise to be made to the insured.

If you do not believe that the above information was true and correct, or you believe that I or the insured have not complied with any request, excluding the items listed in your letter dated 12/7/07, please immediately state with specificity as to what term or condition the insured have or has failed to comply with or what specific documents have not been presented.

Thank you for your attention to this matter.

Sincerely,


Marv Johnson
**Epic Group Public Adjusters**

**cc.** Royal Palm at the Hammocks Condominium Assoc

ASPEN SPECIALTY 000197

## Fred Marks

| | |
|---|---|
| **From:** | Larry Major [larry@epicgrouppa.com] |
| **Sent:** | Friday, April 18, 2008 6:03 PM |
| **To:** | Fred Marks |
| **Subject:** | FW: Royal Palm Place P001323 |

Fred,

I just met with the board on Wed. 4/16.  I still intend to send you letter but needed to add a few things  based on said meeting.

You will have it on Monday.

As far as inspections go, the board confirmed the for the week of May 19th.  Please keep your schedule clear for Royal Palm.

Have a nice weekend.

Sincerely,

Larry Major
Epic Group Public Adjusters
(954)801-6010 cell***
(954)423-9600 office
(954)423-2255 fax.
larry@epicgrouppa@com

---
**On: 04/18/2008 10:32:00 AM**
Fred Marks Wrote:

Larry,

I haven't received the formal letter you indicated that I would receive regarding the inspection procedures.  Are you still planning to send one?

Also, have you received approval from the association Board regarding our inspection the week of May 19th?  Please advise as soon as possible, as I need to let my inspection team know so they can revise their schedules.

Thanks

Fred Marks
General Adjuster
Associated Claims Management
704-485-8975—office
704-973-9303—fax

---
**From:** Fred Marks
**Sent:** Monday, April 14, 2008 11:30 AM

5/9/2008

**EXHIBIT**

**6**

ASPEN SPECIALTY 000417

**To:** 'Larry Major'
**Subject:** RE: Royal Palm Place P001323

Larry,

I would very much like to inspect the property the week of the 19th.  Once we are assured that the insured can:

1. Provide access to the individual condo units.
2. Comply with the inspection procedures that I previously emailed to you.

We will notify our inspection team and solidify the inspection dates.  Please let me know if you need another copy of the inspection procedures or if you have any additional questions about them.  You indicated in your prior email that you would be sending me a letter to address the inspection procedures.  I haven't received this letter to date, but I trust that it is forthcoming.

Once again, with regard to the following standard statement that is located at the end of the majority of your communications:

*"This alsoc onfirms that to date, Royal Palm Condo Assoc.   has complied with all terms and conditions of the insurance policy and have or has cooperated fully with all of the insurer's demands, producing sufficient and adequate documentation at time of payment of insurance benefit,a s well as undisputed or otherwise to be made to the insured.*

*If you do notb elieve that the above information was true and correct, ory ou believe thatIo rt he insured have not complied with any request, please immediately state with specificity as to what term or condition the insured have or has failed to comply with or what specific documents have not  been presented."*

No, this insured has not complied with all of the terms and conditions of the subject policy.  Please see our several letters to the insured dated (03/15/2007, 06/05/2007, 12/07/2007, 02/11/2008, 03/25/2008) for details regarding the noted areas of non-compliance.

Thanks

Fred Marks
General Adjuster
Associated Claims Management
704-485-8975—office
704-973-9303—fax

**From:** Larry Major [mailto:larry@epicgrouppa.com]
**Sent:** Sunday, April 13, 2008 8:01 PM
**To:** Fred Marks
**Subject:** RE: Royal Palm Place P001323

Fred,

Unfortunately, my schedule is booked throughout the remainder of April and we will not be able to give the unit owners enough warning and as you are unavailable in the beginning of May,I  suggest we schedule the inspection the week of the 19th.  Please keep this open.  I can get approval from the board this week and then we can solidify specific dates.

5/9/2008

ASPEN SPECIALTY 000418

This also confirms that to date, Royal Palm Condo Assoc.   has complied with all terms and conditions of the insurance policy and have or has cooperated fully with all of the insurer's demands, producing sufficient and adequate documentation at time of payment of insurance benefit,a s well as undisputed or otherwise to be made to the insured.

If you do not believe thatt he above information was true and correct, ory ou believe thatI ort he insured have not complied with any request, please immediately state with specificity as to what term or condition the insured have or has failed to comply with or what specific documents have not  been presented.

Sincerely,

Larry Major
Epic Group Public Adjusters
(954)801-6010 cell***
(954)423-9600 office
(954)423-2255 fax.
larry@epicgrouppa@com

---

**On: 04/10/2008 10:37:00 AM**
Fred Marks Wrote:

Larry,

Thank you for you quick response to my email and I look forward to receiving your letter.

Regarding our inspection availability, unfortunately, several members of my inspection team members are busy the first few weeks of May, therefore this would not be our preferred time.  That said, we are currently available throughout the remainder of the month of April.  We are also available in May Starting Monday May, 19th.

Please note that we are constantly scheduling inspections so our availability is subject to change.  That said, we are aware of the difficulties involved in scheduling a condominium complex inspection and will try to be flexible regarding the date for inspection.  Please advise us as soon as the insured informs you of potential inspection dates.

If you haven't already please supply the insured with a copy of the inspection procedures so that the can know what to expect regarding the inspection and make plans accordingly.

Thank you,

Fred Marks
General Adjuster
Associated Claims Management
704-485-8975—office

---

**From:** Larry Major [mailto:larry@epicgrouppa.com]

5/9/2008

ASPEN SPECIALTY 000419

**Sent:** Wednesday,A pril 09,2 008 8:59 PM
**To:** Fred Marks
**Subject:** FW: Royal Palm Place P001323

Hello Fred,

I am waiting to hear back from the insured  re: dates but due to my schedule and to give the unit owners ample notice, I'm thinking early May.

As far as your letter is concerned I have a few issues with some of your requirements but I will address them in a formal letter by the end of the week or early next.

Please give me some dates of when you are available to schedule so we can begin to coordinate.

Sincerely,



Larry Major
Epic Group Public Adjusters
(954)801-6010 cell***
(954)423-9600 office
(954)423-2255 fax.
larry@epicgrouppa@com




**On: 04/09/2008 10:01:00 AM**
Fred Marks Wrote:




Hello Larry,

Have you had an opportunity to review the inspection procedures with the insured?  Do you have an expected time frame for when the inspection can occur (per the noted procedures)?

We are interested in performing the inspection as soon as possible, please advise once you have determined potential dates for the inspection.

Thank you,

Fred Marks
General Adjuster
Associated Claims Management
704-485-8975—office

**From:** Fred Marks
**Sent:** Tuesday, April 01,2 008 3:50 PM

5/9/2008

ASPEN SPECIALTY 000420

**To:** 'Larry Major'
**Subject:** RE: Royal Palm Place P001323

Hello Larry,

Per our earlier communication I have attached a standard copy of our inspection procedures for a Condominium Inspection. Please review and advise if you have any questions regarding the noted procedures. Also, please advise of the expected time required to set up the inspection (following the noted procedures) with the association and assure access to all units.

Also, Larry I note the following or other similar statement at the conclusion of nearly all of your communications:

*"This also confirms that to date, that      Royal Palm Place has complied with all terms and conditions of the insurance policy and have or has cooperated fully with all of the insurer's demands, producing sufficient and adequate documentation at time of payment of insurance benefit, as well as undisputed or otherwise to be made to the insured.*

*If you do notb elieve thatt he above information was true and correct, ory ou believe that Io rt he insured have not complied with any request, please immediately state with specificity as to what term or condition the insured have or has failed to comply with or what specific documents have not  been presented."*

As stated in our several letters to you and the insured, no, the insured has not compiled with all of the terms and conditions of the subject insurance policy. The areas of non-compliance have been addressed in detail in our several letters to you and the insured. Therefore, we will not address this standard statement at the conclusion of your letters again. However we will simply refer you to our previous letters.

Thank you,

Fred Marks
General Adjuster
Associated Claims Management
704-485-8975—office

---

**From:** Larry Major [mailto:larry@epicgrouppa.com]
**Sent:** Thursday,M arch 27, 2008 3:03 PM
**To:** Fred Marks
**Subject:** Royal Palm Place P001323

Fred,

Thank your for your letter and reviewing the sent material.

I will be sending a response shortly.  In addition, you assessment of the deductible seems to be accurate on the POL and I will revised it and send it to you once signed and notarized by the insured.

I look forward to hearing from you regarding scheduling the inspections.

This also confirms that to date,that      Royal Palm Place has complied with all terms and conditions of the insurance policy and have or has cooperated fully with all of the insurer's demands, producing sufficient and adequate documentation at time of payment of insurance benefit, as well as undisputed or otherwise to be made to the insured.

If you do notb elieve thatt he above information was true and correct, ory ou believe that I ort he

5/9/2008

ASPEN SPECIALTY 000421

insured have not complied with any request, please immediately state with specificity as to what term or condition the insured have or has failed to comply with or what specific documents have not been presented.

Sincerely,


Larry Major
Epic Group Public Adjusters
(954)801-6010 cell***
(954)423-9600 office
(954)423-2255 fax.
larry@epicgrouppa@com

---

On: 03/25/2008 5:08:00 PM
Fred Marks Wrote:


Larry,


Please find the attached letter.  This letter was also mailed to your offices today.  The letter was also sent to Mr.J orge Rodriguez,t he broker and the property manager.


As stated in the letter, ASIC has advised us to proceed with the investigation of this claim under a full reservation of the rights afforded to ASIC in the subject policy.  As such, we would like to schedule an inspection of the insured site.


I will contact you soon to review the process and procedures for the upcoming inspection.  As you have participated in inspections with ACM staff in the past I am sure that these procedures will be familiar to you.


Thank you


Fred Marks

General Adjuster

Associated Claims Management

704-485-8975-office

704-973-9303-fax


5/9/2008

ASPEN SPECIALTY 000422

```
****** If you reply, don't delete this section ***********
EMail ID: {2CC732CE-2D3B-4E9C-8E51-FDDC394B5C6C}
************************************************
```

**Aspen Specialty**
Insurance Company
600 Atlantic Ave. Floors 20 & 21
Boston, MA 02210

VIA
FACSIMILE
FIRST CLASS US MAIL
CERTIFIED MAIL - RETURN RECEIPT REQUESTED

March 25, 2008

Royal Palm Place at the Hammocks Condominium Association
Jorge Rodriguez—Association President
15750 SW 105 Terrace
Miami, FL 33196

REFERENCE:
Insured:        Royal Palm Place at the Hammocks Condominium Association
Policy No.:     PP000456
Claim No.:      P001323
Date of Loss:   10/24/2005

Dear Mr. Rodriguez:

As you are aware ACM, Inc. is the authorized representative for Aspen Specialty Insurance Company (ASIC) relative to the above captioned occurrence. ASIC is the insurance carrier for the property at the location noted above for the policy period 06/02/2005 to 06/02/2006, subject to the provisions and exclusions of said policy.

The primary purposes of this letter are to:
1. Respond to a letter from Epic Group Public Adjusters, Larry Major and Marv Johnson, received in our office via email on 02/28/2008.
2. Acknowledge our receipt of several hundred pages of documentation related to this loss from your public adjuster(s).
3. Respond to a signed Proof of Loss received in our office via email on March 13, 2008 (mailed copy was received on March 14, 2008).
4. Inform you that Aspen will proceed with their investigation of this claim under a full reservation of the rights afforded to them by the subject policy.

Again, allow me to preface the remainder of this letter, by referring you to the following relevant portions of your policy, form CP0017 0402, which was in effect at the time of the loss:

**EXHIBIT**

**7**

ASPEN SPECIALTY 000157

2

*E: Loss Conditions*
*...3.Duties In The Event Of Loss Or Damage*

    *a. You must see that the following are done in the event of loss or damage to Covered Property:*

      *(1) Notify the police if a law may have been broken.*

      *(2) Give us prompt notice of the loss or damage. Include a description of the property involved.*

      *(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.*

      *(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

      *(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

      *(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*

      *Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

      *(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

      *(8) Cooperate with us in the investigation or settlement of the claim.*

    *b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

Please be advised that cooperation and compliance with all of the duties listed above is required in order to present a claim against this policy. Any breach of the previously stated conditions may preclude coverage under this policy and ASIC reserves their rights accordingly.

ASIC Response to Epic Group Public Adjusters' Letter Dated 02/28/2008

As stated above, one of the primary purposes of this letter is to respond to a letter from Epic Group public adjusters, Larry Major and Marv Johnson, received in our offices on 02/28/2008. In this letter Mr. Major and Mr. Johnson address a letter that we previously had sent to you (and also to them) dated 02/11/08. In our 02/11/2008 letter we expressly informed you and Epic Group Public Adjusters of ASIC's decision to refuse your public adjuster's request for an extension of the subject policy's deadline to produce a signed, sworn proof of loss. (Please see the attached copy of our 02/11/2008 letter to you) However, Mr. Major and Mr. Johnson indicate in their letter dated 02/28/2008 that they believe that ASIC, by allowing a 30-day window for you to present previously requested information, granted their requested extension of the policy's deadline to produce a signed, sworn Proof of Loss. In support of their position Mr. Major and Mr. Johnson reference the following paragraph of our 02/11/2008 letter to you:

*At this time, ASIC formally reserves it rights related to the insured's duties and related coverage defenses referenced above. Without waiving any coverage defenses available to ASIC, ASIC has*

ASPEN SPECIALTY 000158

3

*agreed to hold their file open for an additional 30 day period wherein the insured may present the documentation requested in our prior letters issued to the insured and their public adjuster. By granting this 30 day period to submit the noted documentation, ASIC is in no way waiving their rights under the policy or any coverage defenses based on the late reporting of the claim, the lack of cooperation with our investigation, or the failure to provide a sworn proof of loss within the specified time period (if in fact the proof is not received by 02/12/2008). If we do not receive the requested information, including a completed, signed, sworn proof of loss with 30 days of receipt of this letter we will place this file in an inactive status.*

Unfortunately, Mr. Major and Mr. Johnson failed to recognize that the decision to allow the you (the insured) a 30 day window to present previously requested documentation (including a signed, sworn Proof of Loss) was clearly made after ASIC had formally reserved its rights and defenses. One of the rights and defenses reserved by ASIC was their right to require the insured to present a signed, sworn proof of loss within 60 days of their request. At this time, let me reiterate that at no point in the handling of this claim has ASIC granted an extension of the policy's requirement that the insured produce a signed sworn Proof of Loss within 60 days of request. Please note, that according to our records, the original deadline for you (the insured) to have presented the requested Proof of Loss was 02/12/2008 and this deadline expired without our having received the requested Proof of Loss.

Documentation Received from Your Public Adjuster(s)
At this time allow us to confirm our receipt of two large packages of documentation delivered from your representing public adjuster to us. Please note we have received the following:

1. A large package of documentation consisting of approximately 1500-2000 pages. This package was received on or about February 22, 2008. This package of information contained a cover letter from Epic Group Public Adjusters dated 02/19/2008.
2. A smaller binder of information received in our offices on 03/14/2008. The binder is titled "Royal Palm Place At the Hammocks Condo Association Estimate" and has the subtitle Buildings "1-21 & Clubhouse".

Please be aware that we are still in the process of reviewing the presented information.

Response to the Signed Sworn Proof of Loss Received on March 14, 2008
We formally acknowledge that we did receive a copy of a signed sworn Proof of Loss. The submitted Proof of Loss was received via email on March 13, 2008 and via regular mail on March 14, 2008. The original signed sworn Proof of Loss was received via DHL in our office on March 20, 2008 with a cover letter dated March 18, 2008. This means that the Proof of Loss was not received within 60 days of the ASIC request. This proof of loss indicates that the total cost of Hurricane Wilma related repairs claimed at the insured site equals $2,159,622.90.

At this time, ASIC can not accept this Proof of Loss as it pertains to any indemnification due to Royal Palm Place at the Hammocks Condominium Association. The reasons for this non-acceptance are as follows:

ASPEN SPECIALTY 000159

4

1. The deductible noted on the submitted Proof of Loss is $1,100,000. The policy indicates that the windstorm deductible for this policy is calculated at 5% of the TIV (total insured value). The TIV for this policy equals $31,523,381 therefore the correct deductible for the noted file is $1,576,169.05.

2. To date we have not been provided access to the site in order to perform a complete inspection of the loss. Therefore, we cannot verify the amount of damage being claimed.

We have not confirmed whether or not the Proof of Loss is fully supported by documentation requested by ASIC, as our review of the recently submitted documents is ongoing.

Future Investigation of This Loss by ASIC

We appreciate the documentation that has been provided in an effort to support the referenced claim. We have been advised by ASIC to proceed with an investigation of this claim under a full reservation of rights. This includes the right to address any other coverage issues that might arise in the future under the terms, conditions, exclusions and provisions of the policy. Specifically, ASIC continues to reserve all its rights related to the insured's duty to provide a signed, sworn proof of loss containing the information we request to investigate the claim within 60 days after ASIC's initial request. Again, the company expressly reserves all rights and privileges it may have under the subject policy.

We will contact your public adjuster once we have more thoroughly examined the documentation provided. We will request other items as the need becomes apparent.

As our investigation continues, we will also schedule the examination under oath of the officers of Royal Palm Place at the Hammocks Condominium Association and others. We expect to schedule these examinations under oath once our review of the submitted and requested documentation and our inspection of the site are complete.

Please be aware that we have previously been advised by your public adjuster(s) that they were awaiting a report from a roofing engineer. However, we have not been able to locate a roofing engineer's analysis in the documentation submitted. Please have your public adjuster forward a copy of their engineer's analysis to us as soon as possible.

Reservation of Rights

This letter is not intended to be an exhaustive listing of all of the terms, conditions, exclusions and other provisions of the policy that might possible serve to limit or preclude coverage. ASIC reserves the right to address any other coverage issues that might arise in the future under the terms, conditions, exclusions and provisions of the policy. For these and other reasons, ASIC continues to reserve its rights for any and all claims arising out of this incident. Any action taken by ASIC or anyone acting on their behalf concerning this loss is not to be construed as a waiver of any policy terms and conditions. The company expressly reserves all rights and privileges it may have under the subject policy.

ASPEN SPECIALTY 000160

5

Nothing in this letter should be construed as a denial of coverage. It is our sincere hope that upon receipt of the information requested in this letter we will be able to reach a mutually beneficial and satisfactory conclusion to this loss.

Thank you in advance for your cooperation and we look forward to receiving your response.

Sincerely,
Fred Marks
ACM, Inc,
on behalf of Aspen Specialty Insurance Company
(O) (704) 485-8975
(F) (704) 973-9303
fred.marks@associatedclaimsinc.com

cc:    *Via Email*
       Anthony Anniello – Aspen Specialty

       *Via Facsimile, Email and Regular US Mail*
       Mr. Marv Johnson and Mr. Larry Major
       Epic Group Public Adjusters
       490 Sawgrass Corporate Parkway
       Unit 110
       Sunrise, FL 33325

       *Via Regular US Mail*
       Swett & Crawford
       200 NorthCreek, Suite #800
       3718 Northside Parkway N.E.
       Atlanta, GA 30327

       *Via Regular US Mail*
       Courtesy Property Management
       13250 SW 135 Ave.
       Miami, FL 33186

# SWORN STATEMENT IN PROOF OF LOSS

| 000456 | 06/02/2005 | 06/02/2006 |
|---|---|---|
| Policy Number | Inception date | Expiration date |

| 01323 | Swett & Crawford | 200 Northcreek, Suite 200<br>3718 Northside Pkwy N.E.<br>Atlanta, GA 30327 |
|---|---|---|
| Claim number | Agent | Agency at |

At time of loss, by the above indicated policy of insurance you insured:
Royal Palm Place At The Hammocks Condo Association
15750 SW 105 Terrace
Miami, FL 33196

Against loss to the property described according to the terms and conditions of said policy and all forms, endorsements, transfers and assignments attached thereto.

Time and Origin: A Windstorm - Hurricane Wilma loss occurred about on 1/24/2005
The cause of said loss was: wind

Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: Yes

Interest: No other person or persons had any interest therein or incumbencies thereon except: Epic Group Public Adjusters

| Amount of Insurance on building: | | $5,000,000.00 |
|---|---|---|
| The whole loss and damage is: | | $2,159,622.90 |
| Building: | $2,159,622.90 | |
| Contents: | | |
| Debris removal: | | |
| Law and ordinance: | | |
| Less amount of deductible: | | $1,100,000.00 |
| The amount claimed under the above number policy is | | $1,059,622.90 |

The said loss did not originate by any act, design, or procurement on the part of your insured or its affiliates. Any other information that may be required will be furnished and considered a part of this proof.

In consideration of any payment made pursuant to this proof, the undersigned hereby assigns and transfers to the Insurance Company name above and agrees that said Insurance Company is subrogated to each and all claims and demands against any persons, firms or corporations arising from or connected with such loss or damages to the extent of such payments. The undersigned agrees that he will assist the Insurance Company on the prosecution of such claims and will execute any and all papers necessary in effecting recovery.

*Royal Palm Place at the Hammocks*
Insured

*Property Manager*
Insured

Sworn and subscribed before me this 12th day of March, 2008
State of: Florida        County of: Dade

*Alina W. Oliva*
Notary Public

Please note that this Proof of Loss is SUBJECT TO CHANGE AND ADDENDUM. Amounts may change, either higher or lower should new information become available.

Notice Section 817.234, Florida Statutes, provides in part: " Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree."

Alina M. Oliva
Commission # DD623268
Expires: JAN. 12, 2011
WWW.AARONNOTARY.COM

**Aspen Specialty**
Insurance Company
600 Atlantic Ave. Floors 20 & 21
Boston, MA  02210

**VIA**
**Email**
**FIRST CLASS US MAIL**
**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

July 16, 2008

Royal Palm Place at the Hammocks Condominium Association
Jorge Rodriguez—Association President
15750 SW 105 Terrace
Miami, FL  33196

**REFERENCE:**
    Insured:      Royal Palm Place at the Hammocks Condominium Association
    Policy No.:    PP000456
    Claim No.:    P001323
    Date of Loss:  10/24/2005

Dear Mr. Rodriguez:

As you are aware ACM, Inc. is the authorized representative for Aspen Specialty Insurance Management (ASIM) relative to the above captioned occurrence.  ASIM is the insurance carrier for the property at the location noted above for the policy period 06/02/2005 to 06/02/2006, subject to the provisions and exclusions of said policy.

This letter follows our recent communications with you and your representing public adjusters, Mr. Larry Major and Mr. Marv Johnson.  These communications have involved the following issues:

1. The Proof of Loss we received from you on 04/22/2008.
2. Our attempts to schedule a thorough inspection of the insured site.

Regarding the proof of loss received on 04/22/2008, we mailed a letter to you and your public adjusters on 05/14/2008.  In this 05/14/2008 letter we outlined the several reasons why the referenced proof of loss could not be accepted as a basis for settlement of this claim.  In the same letter we requested that you provide the following information and documentation; we note that some of this information had been requested prior to our 05/14/2008 letter:



EXHIBIT
8

ASPEN SPECIALTY 000449

2

1. We are aware of that you may have an engineering analysis of the roofs at the insured site that supports your position. We need a copy of this engineering report as soon as it is available.
2. As noted in our prior letter, the signature on both previously submitted proofs of loss is that of the property manager and not an actual member of the association board of directors. Please advise in writing if this person is authorized to sign on behalf of the association.
3. Our review of the submitted information has revealed the following requested documents have not been provided.
   a. The name and contact information for the maintenance supervisor.
   b. The phone numbers of the association board members from Jan. 2004 through July 2007.
   c. The name and contact information of the property manager at the time of the loss.
   d. Any correspondence between the insured association and the prior public adjuster pertaining to this loss.
   e. Tax returns for the years 2004, 2005 and 2006 for the insured association and if separately filed for each building within the association.
   f. Copies of all association bank statements from January 2005-2007.
   g. Page #27 of the provided document entitled Royal Palm Place at the Hammocks Condominium Assoc. "Checkbook".
   h. A general ledger report showing all transactions for each month from January 2005 to August 2007.
   i. All records related to any maintenance requests at the insured complex for the period from January 2004 to December 2006.
   j. Copies of any contracts entered into with any contractors to complete the repairs.
   k. A spreadsheet or inventory listing each individual invoice and item which the association is claiming as part of this loss and which building it is being submitted for.
   l. Telephone numbers for each unit owner.
   m. A list of all unit owners that have filed claims against their own policies.
   n. Hurricane Damage surveys for all units. We acknowledge the receipt of 35 surveys to date.

As of the date of this letter we have not received the information or documentation listed above.

Also, we note that we had previously arranged to complete a thorough inspection of the insured site the week starting with Monday, 05/19/08. On 05/08/2008, we received an email from your public adjuster, Mr. Larry Major, informing us that access to all condominium units could not be provided and that the scheduled inspection would have to be postponed. Mr. Major also indicated that he would advise us as soon as the inspection could be rescheduled.

As of the date of this letter, we have not been advised on any potential dates for rescheduling the inspection.

ASPEN SPECIALTY 000450

3

As in our previous letters, allow me to refer you to the following relevant portions of your policy, form CP0017 0402, which was in effect at the time of the loss:

*E: Loss Conditions*

*...3.Duties In The Event Of Loss Or Damage*

a. *You must see that the following are done in the event of loss or damage to Covered Property:*

(1) *Notify the police if a law may have been broken.*

(2) *Give us prompt notice of the loss or damage. Include a description of the property involved.*

(3) *As soon as possible, give us a description of how, when and where the loss or damage occurred.*

(4) *Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.*

(5) *At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*

(6) *As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.*

*Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

(7) *Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*

(8) *Cooperate with us in the investigation or settlement of the claim.*

b. *We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*

As we have advised in our previous letters, cooperation and compliance with all of the duties listed above is required in order to present a claim against this policy. Any breach of the previously stated conditions may preclude coverage under this policy and ASIM reserves their rights accordingly.

Please be aware that the duties described above require your cooperation with our claim investigation.

At this time we formally request that you advise us of your intent to pursue this loss and cooperate with our claim investigation. Please provide the following:

1. All information and documentation that we have previously requested.

2. Potential inspection dates when a thorough inspection of the site can occur. Please note that we expect an inspection of this type to take 5-10 days. (A copy of procedures for the inspection has been attached to this letter.)

ASPEN SPECIALTY 000451

4

We request that this information be submitted within 30 days of the receipt of this letter. In the event that we do not receive a response to this request we will be forced to place this file on an inactive status. This means that no further handling of this claim will occur until you comply with our requests.

As stated in our letter dated 05/14/2008, we have reviewed the status of this claim with ASIM and have been advised to continue our investigation of this claim under a reservation of all rights afforded to ASIM under the subject policy.

As our investigation continues, we will schedule the examination under oath of the officers of Royal Palm Place at the Hammocks Condominium Association, and others. We expect to schedule these examinations under oath once our review of the submitted and requested documentation and information is complete and we have completed our interior inspections.

This letter is not intended to be an exhaustive listing of all of the terms, conditions, exclusions and other provisions of the policy that might possibly serve to limit or preclude coverage. ASIM reserves the right to address any other coverage issues that might arise in the future under the terms, conditions, exclusions and provisions of the policy. For these and other reasons, ASIM continues to reserve its rights for any and all claims arising out of this incident. Any action taken by ASIM or anyone acting on their behalf concerning this loss is not to be construed as a waiver of any policy terms and conditions. The company expressly reserves all rights and privileges it may have under the subject policy.

Nothing in this letter should be construed as a denial of coverage. It is our sincere hope that following the review of the submitted information and noted examinations under oath that, we will be able to reach a mutually beneficial and satisfactory conclusion to this loss.

Thank you in advance for your cooperation and we look forward to receiving your response. Please call me at the numbers listed below if you have any questions, additional information, or suggestions regarding possible alternative methods to finalize this claim.


Sincerely,
Fred Marks
ACM, Inc,
on behalf of Aspen Specialty Insurance Company
(O) (704) 485-8975
(F) (704) 973-9303
fred.marks@associatedclaimsinc.com


cc:     *Via Email*
        Anthony Anniello – Aspen Specialty

        *Via Facsimile, Email and Regular US Mail*
        Mr. Marv Johnson and Mr. Larry Major

5

Epic Group Public Adjusters
490 Sawgrass Corporate Parkway
Unit 110
Sunrise, FL 33325

*Via Regular US Mail*
Swett & Crawford
200 NorthCreek, Suite #800
3718 Northside Parkway N.E.
Atlanta, GA 30327

*Via Regular US Mail*
Courtesy Property Management
13250 SW 135 Ave.
Miami, FL  33186

ASPEN SPECIALTY 000453

INSPECTION PROCEDURES.
This is a common set of procedures which are recommended for condominium complex inspections.

1. The Association BOD and Property Manager will notify all tenants throughout the complex of the days which the inspection is expected to occur.  This notification must occur three weeks prior to the actual inspection. The association will also make arrangements to allow access to **all** units either via master keys or locksmiths or presence of tenant.
2. All Parties will reach a decision prior to beginning the inspection regarding specific procedures for units which cannot be accessed.  A follow up inspection date should occur approximately 2 weeks after the first inspection to catch stragglers.  When the process is finished and after all inspections have occurred there are generally 4-5% of units which could not be seen.  Most carriers cannot include in a claim, estimates of damage for property which they have not been allowed to inspect.
3. The insured's representative and ACM must agree on the number of adjusters to deploy to the site.  We would generally deploy in pairs. (one association representative and one ACM adjuster).  We will need to determine how many representatives of the insured association can be available all day (generally 9am to 5pm or later) for at least 3 days.
4. We generally recommend that any experts that have conducted any type of analysis of the site to be present for the inspection to explain their findings.
5. On the first day of the inspection, but prior to deploying into the complex the lead association representative and lead ACM adjuster will discuss procedures for scoping damage, will identify any specific problems unique to the site such as unsafe units, or unique structural details, and will assign the various buildings in the complex to the adjusting teams.  These discussions usually take 2-3 hours.
6. ACM will prepare a spreadsheet showing each unit within each building.  During the course of the inspection this spreadsheet will be populated with the name of the adjuster which inspected each unit, and the date of the inspection.
7. The inspection teams will meet at the end of each day and also each morning prior to resuming inspections to:
    a. Identify remaining units requiring inspection.
    b. To answer any questions from the inspection teams regarding procedure.
    c. To assign the inspection areas to each team for that day.

8. If possible, we will separate into inspection teams consisting of one independent adjuster and one association representative.  At no time are ACM adjusters authorized to inspect any unit without a representative of the association's governing body or other authorized representative present.
9. ACM staff will take 5-20 photos of every room in every unit throughout the complex.
10. During the inspection we will use tic sheets to make notation of the observed damage.  This will allow the inspecting adjuster to quickly note specific areas of damage.

    a. Upon completion of each unit inspection, we will review the tic sheet for that unit with the public adjuster in the inspection team.

    b. Upon completion of the review of each unit, the public adjuster and ACM adjuster will each initial the tic sheets and note where they agreed or did not agree on the observed damages.

11. Where possible we will use the numbering system noted on the public adjuster's estimate in order to preserve comparability of the estimates.

Following the completion of the inspection ACM, Inc will provide to the public adjuster copies of the completed tic sheets, as well as, any handwritten scope notes which are taken on site. We will also provide a spreadsheet showing the agreed to items in each unit. From this source data the public adjuster will revise and resubmit his estimate of damages. This resubmission is crucial as the public adjuster must have the opportunity to correct any mistakes so as to allow them the opportunity to avoid the appearance of misrepresentation, fraud or concealment.

ASPEN SPECIALTY 000455



**EPIC GROUP**

P U B L I C   A D J U S T E R S

490 Sawgrass Corporate Parkway Unit 110
Sunrise, FL 33325
Office: 954-423-9600
Fax:   954-423-2255

August 01, 2008

ATTN:
Fred Marks
Assoc. Claims Mgmt.
16093 St. Martin Rd
Oakboro, NC 28129

## SENT VIA Email/Regular Mail

| | |
|---|---|
| Re: | **Release of Contract** |
| Insured: | Royal Palm Place |
| Policy No.: | PP000456 |
| Insured Location: | 15750 Sw 105 Terrace None |
| | Miami, FL 33196 |

Dear Mr. Marks:

Please find the attached release of contract with Epic Group Public Adjusters.  As of  7/29/08 we are no longer contracted for the Hurricane Wilma claim with Royal Palm Place.

Please forward all future correspondence to;

**Courtesy Property Managment**
**Attn:  Amy Diaz**
**13250 SW 135th Ave.**
**Miami, FL 33186**

Please contact me if you have any questions on this matter.

Sincerely,

Larry Major
**Epic Group Public Adjusters**
**954-801-6010**

**EXHIBIT**

**9**

ASPEN SPECIALTY  000460

490 Sawgrass Corporate Parkway Unit 110
Sunrise, FL 33325
Office: 954-423-9600
Fax:   954-423-2255

## Mutual Retainer Agreement Release

7/2/08

Royal Palm Place
15750 Sw 105 Terrace

Insured:              Royal Palm Place
Property Address:     15750 Sw 105 Terrace
Insurance Company:    Aspen Specialty Insurance co.
Policy Number:        PP000456
Claim Number:         P001323
Date of Loss:         10/24/2005

Epic Group Public Adjusters hereby releases any and all legal obligations pertaining to the retainer agreement signed on11/13/07by Tim Greene. Both parties agree to a mutual release, whereas neither party will hold the other responsible for any legal obligations set forth in said contract from the date of inception and from this date forward.

_____  8/1/08          _____ 7/29/08
Epic Group Public Adjusters   Date:              Insured                  Date:

_____  8/1/08
Witness                        Date:



PROPERTY   MANAGEMENT

August 12, 2008

S C A N N E D
AUG 1 9 2008

AUG 1 8 2008

Aspen Specialty
Insurance Company
600 Atlantic Avenue Floors 20 & 21
Boston, MA 02210
Attn:  Fred Marks

Via Certified Mail No.:
7008 0500 0001 8569 2218

*PRO500002014*
*e-mailed to Fred 8/19/08*

RE:  Royal Palm Place at the Hammocks Condominium Association
     Policy No.:  PP000456
     Claim No.:  P001323
     Date of Loss: 10/24/2005

Dear Mr. Marks:

Please be advised that I am the Community Association Manager, license under the State
of Florida authorized agent/representative and Property Manager for Royal Palm Place at
the Hammocks Condominium Association Inc., clarifying your question I am authorized
to sign on behalf of the Association as the proof of loss submitted is signed by me.

The following are answer to your questions and concerns:

   a.  The name and contact information for maintenance supervisor: *None.*
   b.  The phone numbers of the Association Board members from Jan. 2004 through
       July 2007.  *See attached Corporation recorded documents providing this
       information for your records.*
   c.  The name and contact information of the Property Manager at the time of the loss.
       *Jason Schoenholtz  from Regatta Realtor and Management Company (305)673-
       1940.*
   d.  Any correspondence between the insured Association and the prior public adjuster
       pertaining to this loss.  *To the best of my knowledge none.*
   e.  Tax returns for the years 2004, 2005 and 2006 for the insured Association and if
       separately filed for each building within the Association.  *We already provided
       these records.  However, please see attached as requested again.*
   f.  Copies of all Association bank statements from January 2005-2007.  *Upon Aspen
       Specialty visit the property of the roof inspection the Association records are
       available for review.*
   g.  Page #27 of the provided document entitled Royal Palm Place at the Hammocks
       Condominium Association "Checkbook".  *Upon Aspen Specialty visit the
       property of the roof inspection the Association records are available for review.*
   h.  A general ledger report showing all transactions for each month from January
       2005 to August 2007.  *Upon Aspen Specialty visit the property of the roof
       inspection the Association records are available for review.*

13250 S.W. 135th Avenue • Miami, Florida 33186
Phone: (305) 254-3888 • Fax: (305) 254-3855

A FULL SERVICE MANAGEMENT COMPANY





EXHIBIT
10

ASPEN SPECIALTY 000091

i. All records related to any maintenance request at the insured complex for the period from January 2004 to December 2006. *Upon Aspen Specialty visit the property of the roof inspection the Association records are available for review.*

j. Copies of any contracts entered into with any contractors to complete the repairs. *There is no contract signed. The repairs are paid as the work is being performed and requested of roof leaks. Also, invoices are available upon Aspen Specialty visit the property of the roof inspection the Association records are available for review.*

k. A spreadsheet or inventory listing each individual invoice and item which the Association is claiming as part of this loss and which building it is being submitted for. *With respect to this request, I do not see the reason of a spreadsheet as each building has an address and unit number to on each individual invoice of roof repairs.*

l. Telephone numbers for each unit owner. *This list was provided on the request of Aspen letter dated 2/2008. We provided a report of what is available. The Association does not have all the owners phone number, as this is not mandatory to provide.*

m. A list of all owners that have filed claims against their own policies. *The Association does not have this information as it is not an expense paid by the Association and is not mandatory of owners to provide to the Association.*

n. Hurricane Damage surveys for all units. We acknowledged the receipts of 35 surveys to date. *These were the survey obtained by the Association at the time of the request.*

Please be advised that the Association can not continue to incur additional expenses that are not part of the budget for 2008. Due to this, we will allow you to review the Association records instead of incurring additional expenses for copies of documentations that Aspen is requesting prior and after the date of loss. We will allow Aspen Specialty to review all the Association records at the time that property inspection of the insured site. In addition, it's not clear why from the date of loss 10/24/2005 to date no inspection of the property roof damages have been done. Furthermore, the Association will continue and have all intent to pursue this loss. Please contact me Monday through Friday 9:00 a.m. to 4:00 p.m., to make arrangement on the dates of inspection of the site property can occur. We expect a response in order to schedule inspection within 30 days of receipt of this letter.

Thank you in advance for your cooperation and I look forward to receiving your response. Should you have any questions, please contact me at (305) 254-3888 Ext., 119.

Sincerely,
*FOR THE BOARD OF DIRECTORS*

Amalay Diaz, CAM
Property Manager

xc:    Board of Directors
       Insurance Claim File

ASPEN SPECIALTY D00092

**Aspen Specialty**
Insurance Management
600 Atlantic Ave. Floors 20 & 21
Boston, MA 02210

VIA
Email
FIRST CLASS US MAIL
CERTIFIED MAIL - RETURN RECEIPT REQUESTED

September 12, 2008

Royal Palm Place at the Hammocks Condominium Association
Jorge Rodriguez—Association President
Amalay Diaz—Property Manager
15750 SW 105 Terrace
Miami, FL 33196

REFERENCE:
    Insured:       Royal Palm Place at the Hammocks Condominium Association
    Policy No.:    PP000456
    Claim No.:    P001323
    Date of Loss:  10/24/2005

Dear Mr. Rodriguez and Ms. Diaz:

As you are aware Associated Claims Management, Inc (ACM) is the authorized representative for Aspen Specialty Insurance Management (ASIM) relative to the above captioned occurrence. ASIM is the insurance carrier for the property at the location noted above for the policy period 06/02/2005 to 06/02/2006, subject to the provisions and exclusions of said policy.

This letter shall serve as an acknowledgement of our receipt a letter from Ms. Diaz dated 08/12/2008.

It should be noted that we did receive a contract release from your former public adjusting firm, Epic Group Public Adjusters on 08/01/02008. We understand that Royal Palm Place at the Hammocks Condominium Association is not, at this time, represented by any outside party. Please advise if you have retained a different public adjuster.

In her 08/12/2008 letter Ms. Diaz responds to our letter to the association dated 07/16/2008 and informs us that she will be representing the association going forward with regard to this loss. We appreciate the information provided by Ms. Diaz and we look forward to working with her towards a mutually agreeable resolution to this loss.



EXHIBIT

11

Aspen 000233